*125 O.pisrrok op the Co out, by
Judcíe Mills. .
Elijah Thornberry bought, or agreed to buy of liam Peck,-*a lot or lots in Williamsburg, and.fpr .the price executed his three notes of one each, payable at different and distant days./fÓne °f these notes^Peck sold and assigned to James Fitzgerald, and the remaining.two he sol'd and assigned to Thomas Harrison, who afterwards sold and assigned, them-' to said Fitzgerald, whereby he became proprietor- of all three. After they became due, Fitzgerald sued T^orn-berry, and obtained judgments at law, which -were.enjoined by Thornberry, on the ground that their consideration had failed,, as Peck was unable to make a title to the lots. This injunction was perpetúatele,and the contract between Peck and Thornberry set aside, and Fitzgerald thereupon became entitled to his recourse on Peck, for what he had paid for one of the notes,’ and against Harrison, for what he had paid for the remaining two. Peck, supposing himself ultimately " liable for all of them, placed himself in the shoes of H’aiyikon', and agreed to pay for the wholaof them, and paid two i •* -t.i ¶ * % * . acinnn «rntyh ntao ta hundred dollars as part, and th#!esidue which was to be paid, was settled between the counsel of the parties, and Peck, in the absence of Fitzgerald, left, with-his own counsel his note, with security, made according to the calculation, and his counsel handed it to the eoun-*5el of Fitzgerald, and he to Fitzgerald himself: This note was for $¡206 7. When it became due,'Fitzger-afd brought his action and recovered judgment'thereon, To be relieved against this judgment, this bill is filed, alleging that the settlement was wrong, and the sum for given, was too high; that for the note assigned directly frota " e notes only one hundred and fifteen only sixty dollars, and for both the notes which this last note was Fitzgerald paid Pede to him, assigned by Harrison, dollars; but that in the settlement the amount which each note demanded on its face, with its interest, was taken, and the costs of the three suits at law, and one in chancery, were included, and also ten per centum damages on the whole three, because that was the sum to which Fitzgerald would have been entitled, if the *126 injunction of Thornberry had been dissolved, instead of being made perpetual.
• This statement is not substantially controverted in the answer, at le.asl there is an admission that the sums for which the bill alleged the notes were sold, were not erroneously stated; but it is contended, that the settlement and,calculation were made by Peck’s*attorney in the absence of Fitzgerald, and that the matter was done by -Peck, out of a disposition to act jijrerally, as Fitzgerald, had been long kept out of his Money, and had had costs to pay, and considerable personal trouble with the different controversies; that this was all done by Peck with his eyes open, and that there is no usury in the transaction.
No evidence was taken, and the court below only allowed the sums which had been actually paid by Fitzgerald for the notes, and the costs, and perpetuated the injunctiorFfor the residue; to reverse which decree Fitzgerald has prosecuted this writ of error.
We perceive no ground of relief to Peck, on account of any usury in purchasing the notes. The purchase of the notes by him for less than their nominal amount, appears to have been bona fide, and not any device to avoid j.he statute against usury; and in such case it has-been often decided that the transaction is not usurious. No law against usury prohibits the purchase of notes or other securities,- for less than their real, or nominal amount, more than the purchase of any other commodity at a low rate, unless such sale is resorted to as a stratagem to evade the force of the act.
Nor does the ten per centum included in the settlement, appear to have been usurious, it does not seem to have been inserted for the purpose of obtaining forbearance, nor does any forbearance appear to have been given on that account. It must have been inserted as a substitute for what Fitzgerald would have gained, had he succeeded against Thornberry, the obligor in the notes. As the law gives that as a compensation to a successful defendant in an injunction, it seems to have-been deemed not unreasonable, to allow that to Fitzgerald, although unsuccessful, because he had been let into that unsuccessful controversy by the act of Peck, who had sold notes that equity would not allow his ven-dee to recover.
*127 Nor do we conceive that the' success of Peck on the score of fraud, i‘s more certain. He does not charge in the bill,, thahhe was led'into executing his note for so large an amount, by any fraud or address of Fitzgerald. Indeed, totakethe bill and answer togethpr, it seems pretty evident that Fitzgerald was not present, but that . the calculation was made and agreed upon by the counsel of the parties, and the note exedu'teJShy Peck in the absence of Fitzgerald. It is, hower|||f clear, that Peck has given his note for more than hewas legally liable. For that, he who recovers on an assignment against his assignor, can only obtain the amount which he absolutely paid, isj as a ‘general rule, well settled. But the question is, how can he be relieved? If he has done this voluntarily, with his eyes open, we perceive no principle of equity which will relieve him; for equity will not, in general, relieve against a judgment on a voluntary bond, without some other ground, than that it was given without an adequate considerar tion. If Peck, then, can be relieved upon any ground, it must be that which the court below has assumed; that is, the ground of a mistake as to what he was really bound to pay. On this ground, his case is not clear of difficulty; because the allegations of his bill are scarcely sufficient on this point. From one port of if, however, we conceive we can gather enough to support the claim. He alleges, that “ supposing he was legally' bound to pay it, he passed his note” for the amount. The answer insists, that as Peck’s own counsel had the calculation to make, and he had time enough to consider of it, before he executed his note, that he must have understood it; hut it does not allege that this matter was made, at the time, the subject of conversation, .or that the real legal liability of the parties was then . .understood; and the presumption is violent indeed, that Peck would have executed his note for no more than he was bound for in law, had he understood his legal liability; and the truth seem^to be here, that the error was madeby counsel, in whose legal skill Peck might reasonably place confidence.
It has been settled by this court, that even for mis- ■ takes in law, relief may be granted in some cases. The same principle may apply to, and govern this case.
It has, however, been contended, that Peck, in this instance, ought not to be relieved, because it was a *128 fraud in him to set notes in circulation, -which could not recoyere<I. If he had committed a fraud in doing so, it might be an impediment to the relief he is seeking; but as he might have supposed the notes recoverable, and have sold them very innocently, and after-wards, through some casualty, beyond his control, have become unable to make the title of the lots, for which they \jrehg given, it was incumbent on the opposite side to have'.§lleged and proved the fraud, which he has not done. ' . ' .
It is also contended, that if relief is to be given, the court below has extended it too far, in several respects, and particularly w’ith regard to the two notes sold by Harrison to Fitzgerald; and that as Peck was bound to Harrison for more, Fitzgerald ought to have recovered it from Peck. Whether Peck is bound to account to Harrison for the difference between the price for which he sold to Harrison, and that for which Harrison sold to Fitzgerald, as he seems to suppose in his bill, is a question we need not now decide, as Harrison is not before the court. But we think with the court below on this point, that Peck agreed to assume the liabilities of Harrison, and cannot be presumed, in the absence of any express agreement to the contrary, to have intended to extend his assumption any further than what Harrison was bound.
We have examined the details of the decree .of the court below in other respects, and discover that court has allowed to Fitzgerald the amount paid by him, both to Harrison and Peck, with the interest on each, and the costs of three suits at law, and all the costs claimed to be expended in the chancery suit, Thornberry against Fitzgerald, which was an attorney’s fee; and after deducting these sums, has dissolved the injunction for the ■residue, with interest from the date of the note. This,we conceive, was all that the plaintiff in error is entitled to.
Upon the whole case, (he decree must he affirmed with costs.