Mr. Justice Walker delivered the opinion of the Court. The grounds of relief relied upon in this case, are that the contract, when entered into, was intended to effect a particular object, which, owing to a misapprehension of the law, has failed, and is of no value to the purchaser. Every one is presumed to know the law, and whether this is true or false in point of fact, like most other great principles or starting points in science, it must be received and acted upon as true. The maxim, ignorantia juris non excused, is applicable to civil as well as criminal jurisprudence, and recognized in courts of chancery as well as at common law. A departure from it, under any circumstances, should be distinctly marked, and so guarded as to leave the general rule unimpaired. Judge Story and Chancellor Kent, have each elaborately discussed this subject. The first, in his Commentaries on Equity, thus closes his investigation, at page 151, vol. 1: “We have gone over the principal cases which are supposed to contain contradictions of, or exceptions to the general rule, that ignorance of law with a full knowledge of the facts, furnishes no ground to rescind agreements, or to set aside solemn acts of the parties. Without undertaking to assert that there are none of these cases which are inconsistent with the rule, it may be affirmed that the real exceptions to it are few, and generally stand upon some very urgent pressure of circumstances.” Chancellor Kent, upon the same subject, says: “ Courts do not undertake to relieve parties from their acts and deeds fairly done, though under a mistake of law. Every man is to be charged, at his peril, with a knowledge of the law. There is no other principle which is safe and practicable 4n the common intercourse of mankind.” Lyon v. Richmond, 2 John. Ch. Rep. 60. Judge Catron, in the case of The Bank of United States v. Daniel et al., 12 Peters 55, said; “The remedial power claimed by courts of chancery to relieve against mistakes of law is a doctrine rather grounded upon exceptions than upon established rules.” It would be a useless consumption of time to multiply authorities upon this subject: as a rule to be cherished as of vital importance in the admimstsation of the law, there can be no cloubt; and exceptions, when made, should, for their merits and peculiar circumstances, clearly show the necessity of an exception. We will next give attention to the cases which have been held exceptions to this very general rule. In the case of Bingham v. Bingham, 1 Ves. 127, the plaintiff purchased property to which, by law, he was entitled, but was ignorant of his legal right. Upon a bill filed for that purpose, it was decreed that the purchase money should be refunded to him. Willan v. Wiliam, 16 Ves. 72, was a case where relief was granted because it was, as said by Lord Eldon, impossible that the parties could have understood the effect of the covenant: he said it was a matter of surprise upon both, and decreed a rescis-ión of the contract. In Executors of Hopkins v. Masyek et al., 1 Hill’s Ch. Rep., the court distinguished between ignorance and mistake of law. Ignorance, says the court, cannot be proved, and for that reason, the court cannot relieve against it. But not so in regard to a mistake of Law. That is sometimes susceptible of proof, and. in conclusion they say, “ mistakes, as to matters of fact, have always been regarded as reli'evable upon clear, full and irrefra-gible proof, and mistakes in law ought to be upon the same footing, when the proof is equally certain.” In Hitchcock v. Giddings, 4 Price 135, the Court of Exchequer decided that, where a vendor, through ignorance and mistake, agreed to sell property in which he had no interest at the time of the sale, the contract should be rescinded. In Fitzgerald v. Peck, 4 Littell 127, Peck, under a misapprehension as to the amount of his legal liability, executed his notes for more than he wqs in law bound to pay, the court say, “If Peck then can be relieved upon any ground, it must be that which the court below has assumed, that is, the ground of a mistake as- to- what he was really bound to pay,” and the court granted the relief prayed-. In Hall v. Reed, 2 Barbour Ch. Rep. 503, the ground set up for a rescisión of the contract, was ignorance of the existence of a-statute declaring 2,000 pounds avoirdupois a ton, contrary to the usage of the country and the common understanding and the understanding of the complainant when he entered into the com-tract. The Chancellor, in this case, said, “The allegation of ig-. norance is put in issue by the answer. And I do not know of any. means of proving his ignorance of the existence of a statutory pro-, vision, which the law presumes every citizen of the State to be ae-. quainted with, who has arrived at the years of discretion. I can. imagine a case, in which, the party holding the affirmative of the fact, may give such evidence as will satisfy a reasonable man, that he acted under a mistake of law. And courts have sometimes granted relief in such cases, where it could be done with-, out impairing the rights of those who are not aware of the exis-. tence of such mistake when their right accrued.” In this case,, a distinction is taken between “ignorance of the law” and “mis-: -take of the law; ” and this distinction,was also taken in Law rence v. Branbien, 2 Baily Law Rep. 623: and by Senator Page, in Chaplin v. Layton, 18 Wend 423. In Layton et al v. Chaplin,, 1 Edw. Ch. Rep. 467, it was held that a contract- entered into under a material misconception of legal-rights, amounting-to a. mistake of law in the contracting parties, by which the object of’ it cannot be accomplished, is as liable to be set aside or rescinr ded as a contract founded in mistake of matters, of fact. In this case, the parties were advised, of a prior conveyance, but mis.-took its legal effect. The court is very clear and, explicit,.both: in the grounds assumed, and the reasons for assuming, therm. Both parties were equally mistaken in the law,, resulting fro ra-the previous transfers. The-court-states the general rule fully?,. that ignorance of the law excuseth no man; and-then say, “Yet1,, there are cases in which, this court will, interfere up on, the ground! of such mistake, in order to relieve a party from the effect of a contract. As for instance, if one is ignorant of a matter of law involved in the transaction, and another knowing it to he so, takes advantage of such circumstance to make the contract, here the court will relieve, although perhaps, more properly on account of fraud in the one party than of ignorance of law in the other.” So, if both parties should be ignorant of a matter of law, and should enter into a contract for a particular object, the result whereof would, by law, be different from what they mutually intended; here, on account of the surprise, or immediate result of the mistake of both, there can be no great reason why the court should not interfere in order to prevent the enforcement of the contract, and relieve from the unexpected consequences of it. To refuse, would be to permit one party to take an unconscien-cious advantage of the other, and to derive a benefit from a contract which neither of them intended it should produce. There are a few other cases sustaining the exception to the general rule, but the books in which they are reported are not within our reach. In presenting the cases above, we have preferred to give the language of the courts touching the point at issue, that the precise ground on which each exception rested might be more clearly understood. It will be seen that several of them distinguish between mistakes arising from ignorance of the existence of the law, and such as arise in cases where the law was known to exist, but the contract made under a misapprehension of its legal effect, denying all relief in the first instance, not because the injury itself may not be as great, but because of the presumption that every man knows the public laws of the country, and the general, if not invariable impossibility of proving a negative, which may be locked up in the bosom of the party chargeable with such knowledge. In the second instance, as to the legal rights of the parties, when misconceived under the law, they suppose the facts susceptible of proof in many instances, and when it is established that such was the case, and that injury has resulted to one or both of the parties, which may be relieved against consistently with other general principles of equity, relief is granted. In other cases, a distinction has been taken between contracts entered into for a particular purpose, and others; and where such particular object or purpose fails, relief is granted. And also in cases where the party, under a mistake of law sells that to which he has no title: and this is placed merely on the ground of a total failure of consideration. These are the most plausible grounds assumed for a departure from the general rule, the importance of which seems to be fully recognized. There appears to have been an effort by the courts to uphold the maxim that ignorance of the law shall not excuse, and at the same time, in cases of peculiar hardship, they have made distinctions between ignorance of the existence and of the legal effect of the law, and also of contracts for a special purpose and a general purpose, which, however plausible, when carefully considered, are infringements upon the maxim, and are allowed rather because of the hardship of the particular case and the facilities for proving it, than upon principle. With these remarks, we will proceed to examine the facts of the case before us, and see to what class it belongs, and to what extent, if any, relief should be granted. Notwithstanding the alleged ignorance of the law, it evidently does not belong to the first class of ignorance, that is, ignorance of the existence of the law. The contract refers directly to the law of Congress. The nature of the grant implies it, and the letter of the complainant given in evidence proves it beyond all doubt; and as regards a mistake about the quantity required to be entered according to the provisions of the law, there can be as little doubt: for in the letter of the complainant to the Governor, when in treaty for the land, he says: “The law requires that locations shall be made in tracts not less than 640 acres. As I have located that number of acres, I can also legally locate adjoining, any number of acres less than 640 acres.” The impression of the complainant, as ascertained from this letter, was, that as he had already entered 640 acres, he could enlarge his location on an adjoining tract by adding to-it, even though the second location should be a less quantity than 640 acres. If, therefore, there was any misapprehension in this case, it must have consisted in this only, for by this letter he distinctly recognized two restrictive-features of the act of Congress; one, that not less than 640 acres could be located in one connexion; the other, that the second entry or location must be contiguous and in connexion with the former, and notin detached tracts, as he has asserted in his bill; so that, in this respect, there could have been no misapprehension produced either by the act of the legislature or by the notice of the Governor: which provision in the act was probably intended-to relate to the sale of the lands after location, and not to the- tracts to be located. Concede the act (as it is,)- to be somewhat vague and indefinite, still this'complainant seems to have been in no respect deceived or mistaken, unless it should be in regard to his power to locate a. less quantity, than. 640 acres. In this respect, there can be no doubt, from the nature of the transaction, that both the Governor and the complainant labored under a misapprehension. The Governor had no interest in the transaction; he could therefore have no motive to deceive the purchaser... It was a contract, in.behalf of the State, and it is not to be presumed that a State would intentionally wrong her citizen.. The purchaser must have been aware that, unless he could make the location, the contract was worthless to him, and therefore, he could not-have intentionally made a contract wholly valueless to himself. That the law forbid the entry, is evident from the language of the act of Congress, as well as from-the decision, of. the Land Officers, and the opinion of the Commissioner of the General Land Office. Indeed it has been decided- by the Supreme Court of The United States, that the decision of the Land Officers of. the proper Land Office is final. But if not, surely the purchaser was no more bound to appeal from their decision, than to apply for a special act of Congress for relief. The moment his application was presented and definitely rejected, the law of.the case,, so far as Ms power to locate a less quantity than 640 acres was concerned, was definitely settled. The result of the matter is this; the State attempted to confer power on the purchaser to do that which was forbidden by law, which she had herself no power to do, and of course could delegate no greater authority to her agent. What, then, did the purchaser get by his contract? Not property; 'for the State had no property in lands, until they were selected and affirmed to her. He, at most, only got a floating right, which floating right was, however, dependent upon a condition precedent, which, at the time of the making of the contract, was contrary to law, and therefore impossible to be performed, for, unless jthe purchaser could locate the float, it was utterly worthless. It was not property or other valuable thing; it was not even that which might secure -a valuable thing. This then, is a peculiar case, -stronger perhaps than any found in the books, in this, that it is not even a direct contract for property, but a contract for property dependent on a precedent unlawful act. Under a clear misapprehension of the legal effect of the contract, the complainant executed Ms note to the State for this and no other consideration. The question is, shall we permit the State to go on and collect this money from the purchaser, when she gave no consideration whatever and has lost nothing? We say, lost nothing; because it is evident that she never did part with her right to locate this 520 acres of land: the contract was void, against law, and consequently, the title remained in her. If she has been delayed in selecting other lands, it has been the result of her own misapprehension of the law, and should not prejudice the complainant’s claims to equitable relief. In view of the whole case, we think complainant was entitled to the relief prayed in his bill. Finding no error in the decree of the circuit court, the same is. In all things affirmed, with costs.