No. 26.—Thomas B. Wyche and Wife, plaintiffs in error, *vs.* Thomas B. Greene, defendant.

[1.] At Law, an agreement must be strictly performed; but Courts of Equity will, in cases of accident, surprise, fraud or ignorance, under certain circumstances, grant relief.

[2.] If a writing has been executed, with a view of obtaining a particular object, and by mistake, it has been so drawn as not to have the contemplated operation at Law, Chancery will reform the instrument, so that it will fulfil the intention of the parties.

Agreements, whether executed or executory, within or without the Statute of Frauds, whether for the conveyance of real or personal property, will be reformed by Courts of Equity, on the ground of mistake.

[3.] The proper inquiry, in all applications for relief against mistakes is, does the instrument contain the true agreement between the parties? Is it what they intended it should be?

[4.] As to the degree of proof that will be required, before relief will be granted against written instruments, no uniformly inflexible rule has been prescribed. The *mistake* itself should be *plain* and made out by evidence clear of all reasonable doubt.

[5.] Relief will be granted *in certain cases*, not only where the fact of the mistake is expressly established, but where it is fairly inferred from the nature of the transaction.

[6.] Courts of Equity will grant relief more readily, where the mistake is made to appear, by reference to another writing.

[7.] The instrument reformed, takes effect from the time when it was originally executed.

[8.] It is not necessary that the *donee* should be cognizant of the instructions given to the scrivener by the *donor*. It is sufficient to entitle those claiming under the deed of gift, to have it reformed if he accepted it, as it was understood and intended to be drawn at the time it was executed.

[9.] Equity will interfere to correct mistakes and reform written contracts between the original parties, and those claiming under them in privity, such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, and judgment creditors or purchasers from them, with notice of the facts.

[10.] Title to relief against mistakes may be forfeited by acquiescence or unreasonable delay; but lapse of time can never be set up as a defence in Equity, when it would not constitute a good statutable bar at Law.

[11.] The Courts, slow at all times in exerting their authority, to reform written instruments, will be much more reluctant to interpose where upwards of thirty years have elapsed since the execution of the instrument. In such a case, the mistake should be made out by the most explicit and unequivocal proof.

[12.] When, from the record, it appears conclusively, that the proper decision was made, the proceeding will not be reversed on error, because bad reasons are given for it, unless the party was prejudiced thereby.

[13.] If there is Equity in a bill, the want of all the necessary parties is not a sufficient ground for refusing to sanction it.

[14.] To transfer property by gift, there must be a deed or instrument of gift—or, an actual delivery of the thing, to the donee.

In Equity, in Upson Superior Court.   Application for injunction ; refused by Judge STARKE, February Term, 1852.

The bill charges, that the complainants intermarried in the year 1839 ; and that Adaline W. Wyche is the daughter of Patience C. Greene, who was the daughter of Batt Wyche ; that Patience C. Greene intermarried with Thomas B. Greene, the defendant, in the year 1814, and they have had the said Adaline W. and seven other children, the issue of said marriage ; and that Patience C. Greene died in 1848.

The bill charges that Batt Wyche, in February, 1817, entertained a *design* to loan his daughter, Patience C. during her life, four negro slaves, viz : Sally, Moses, Ellick and Sealy, together with their increase; and at the death of said Patience C. to give said negroes in fee simple, to the children of said Patience C. share and share alike ; and that for the purpose of executing this design, he made and delivered a deed of gift, of which the following is a copy :

" STATE OF GEORGIA, MONTGOMERY COUNTY.

" Know all men by these presents, that I, Batt Wyche, for and in consideration of the love and affection which I have and bear unto my well beloved daughter, Patience Clark Greene, and the issues of her body, do give, grant and relinquish unto the said Patience C. Greene and issue, four negro slaves, to wit : Sally, now runaway, Moses, Ellick and Sealy, together with all their increase, heretofore and after these presents, the rights thereof, whatsoever unto the said slaves and increase, to have and to hold the said slaves and increase as aforesaid, unto the before named Patience C. Green and issues, forever freed and cleared of, and from the claim of him, the said subscriber. In witness whereof, the said Batt Wyche has hereunto set his hand and seal, the 15th day of February, 1817.

W. CONNER,                    BATT WYCHE. [L. s.]
J, G. CONNER, J. I. C.

On the deed were the following entries : " I make an addition to the within deed, of five hundred dollars, in place of a small negro and other things. Given under my hand, this 6th day of October, 1817, to be paid next fall.

" Batt Wyche."

" Received, the 12th day of April, 1819, four hundred and fifty dollars of the above deed.

"Thomas B. Greene."

" Received, June 2d, 1821, in full, for the above, fifty dollars.
" Thomas B. Greene."

The deed was duly recorded in the Clerk's office of the Superior Court of Montgomery County, on the 27th day of May, 1817.

The bill charges, that the draftsman who drew the deed of gift, made a mistake in drawing the same, and that he ought to have drawn it so as to have loaned said negroes and their increase, to said Patience C. during her life, and to have given them to the children of said Patience C. at her death ; and that said Batt Wyche so intended said deed, at the time he made the same ; and that the defendant, Thomas B. Greene, so understood the same, when he received said deed.

The bill charges, that Batt Wyche, in his life time, delivered the deed of gift to Thomas B. Greene, and the negroes to him and his wife ; that Greene kept the deed of gift till after the death of Batt Wyche, that is, until 1824, and then delivered it to George Wyche, administrator of Batt Wyche, as a voucher for money paid him by said administrator.; and that it was found in 1850 or 1851, among the papers of the said George Wyche.

The bill charges, that Greene, at the time he received said deed of gift, and while he held the same, had knowledge of the *design* of Batt Wyche, only to loan said negroes to said Patience C. and to give them to her children ; that the said negroes, Sally and Sealy, had issue, twenty-nine negroes, all of which Greene had in his possession, in March, 1850. The bil

states, that at the April Term, 1850, of the Superior Court of Upson County, complainants brought their action of trover against the defendant, for said negroes; and that at the October Term, 1850, of said Superior Court, the action of trover came on for trial, and the Court refused to allow complainants to show said mistake, and a verdict was rendered in favor of the defendants, from which complainants had taken an appeal, which was now pending.

The bill prayed that the mistake might be corrected, the deed of gift reformed, and the action of trover enjoined.

Judge STARK refused to sanction the bill, upon the following grounds:

1st. Because the complainants are plaintiffs in the action of trover, and this bill is filed to aid the recovery at Law. If the object of the bill shall be attained and the deed of gift reformed; still the plaintiffs having no legal interest in the property at the time the suit was instituted, cannot prevail at Law.

2d. Because there is no equity or justice in the bill. It does not appear that Greene knew what instructions he gave to the draftsman. Thirty-four years ago he seems to have received such a deed as conveyed a fee in the property to himself "*jure uxoris;*" and for that time he has maintained and supported the negroes and enhanced their value. The reformation of the deed now, would operate as an iniquitous surprise on him. He ought to occuupy, and in my opinion, does occupy the same favored position with a *bona fide* purchaser without notice.

3d. Because it does not appear from the bill that the *feoffor*, Batt Wyche, though he seems to have lived many years after the execution of the deed, ever dissented from any of its provisions, or that his administrator or himself ever complained of any mistake.

4th. Because several months after the execution of the deed now sought to be corrected, it seems that Batt Wyche had it before him and did an act, (see the indorsement on the deed) which, if it is not strongly affirmatory of the deed as it stands, still shows no dissent on account of mistake.

5th. Because the great length of time which has intervened

since the execution of this deed would seem to be a very great objection now, to the interposition of a Court of Equity, in a case situated as this is, particularly as no fraud is imputed to Greene, the defendant. This is an executed gift, made and accepted and acted upon by Greene, and acquiesced in for thirty-four years by all parties; any interference of a Court of Equity to disturb the estate created by the donor, as manifested by the written conveyance, could only be productive of mischief.

6th. Because it does not appear how Greene is to be compensated for his trouble and expense in raising, clothing, feeding and nourishing thirty odd negroes, for thirty odd years. The mistake does not seem to have been insisted on, or made known by Batt Wyche, or those claiming under him, until more than thirty years had elapsed; and now to correct the mistake, and wrest the property from Greene, without compensation, would be an egregious fraud on him.

To which decision and refusal of the Court, counsel for complainants excepted.

O. C. GIBSON, for plaintiff in error.

GOODE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was a bill filed by Thomas F. Wyche and Adaline W. Wyche, his wife, against Thomas C. Greene, of Upson County. It stated that the complainants were intermarried in 1839; that Adaline W. is the child of Patience C. Greene, the wife of the defendant, and daughter of Batt Wyche, late of Montgomery County; that the defendant and the said Patience C. were married in 1814; and that Patience C. the mother of Adaline W. died in 1848; that Batt Wyche, in 1817, and for sometime before that date, entertained the wish and purpose, to loan to his daughter, Patience C. for her life time, four negro slaves, to wit, Sally, Moses, Ellick and Sealy, together with all their increase, previous and subsequent to that time; and at the death of his

daughter, to give the said negroes and their increase, in fee simple, to the children that were and might be born of the said Patience C. at her death, the same to be divided, share and share alike among them, immediately upon her demise; *that with the design of loaning and giving said negroes and their increase in manner aforesaid, and for the purpose of carrying the same into effect,* the said Batt Wyche, on the 15th day of February, 1817, executed a deed of gift, in the presence of W. Conner and J. G. Conner, J. I. C. of which the following is a copy:

"STATE OF GEORGIA, MONTGOMERY COUNTY.

Know all men by these presents, that I, Batt Wyche, for and in consideration of the love and affection which I have and bear unto my well beloved daughter, Patience Clark Greene and the issues of her body, do give, grant and relinquish unto the said Patience C. Greene and issue, four negro slaves, to wit, Sally, Moses, Ellick and Sealy, together with all their increase, heretofore and after these presents, the rights thereof, whatsoever, unto the said slaves and increase, to have and to hold the said slaves and increase, as aforesaid, unto the before named Patience C. Greene and issues, forever freed and cleared of, and from the claim of him, the said subscriber. In witness whereof, the said Batt Wyche has hereunto set his hand and seal, the 15th day of February, 1817.

BATT WYCHE. [L. s.]

In presence of   W. CONNER,
J. G. CONNER, J. I. C.


"I make an addition to the within deed, of five hundred dollars, in place of one small negro and other things. Given under my hand, this 6th day of October, 1817. To be paid next fall."

BATT WYCHE.

Test, WILSON CONNER, J. I. C.


"Received, the 12th of April, 1819, four hundred and fifty dollars of the above deed.   THOMAS B. GREENE."

" Received, June 2d, 1821, in full, of the above, fifty dollars.
                                            THOMAS B. GREENE."

The bill further charges, that on the day when said deed was executed, or about that time, that the said Batt Wyche, for the purposes hereinbefore stated, delivered the deed of gift to Greene, his son-in-law, who received the same, to be held for the use and benefit of his wife and children ; and that he did, in point of fact, so hold said deed, until the year 1824, when he gave up the same to the administrator of Batt Wyche, to be used as a voucher, or for some other purpose unknown to the complainants'; and that said instrument was found in 1850 or 1851, among the papers of George Wyche, who is now dead, but who was one of the administrators of Batt Wyche.

The bill further states, that the four negroes mentioned in the deed, were delivered, by Batt Wyche, in his life time, to Thomas B. Greene. It further charges, that the draftsman, in drawing said deed of gift, failed to use apt words, *to carry the design and purpose* of Batt Wyche into effect, as clearly set forth; and that the scrivener, in framing the instrument, made a mistake in this : that instead of loaning the negroes and their increase to Patience C. Greene, during her life, and at her death giving the property in fee simple, to the children, the writer drew the deed so as to convey the negroes to Mrs. Greene, absolutely, and the issue of her body. The bill avers that this was the result of accident ; and that Batt Wyche, *at the time of executing and delivering said deed of gift, intended the same to be a conveyance by deed of gift, that loaned the four slaves and increase to Mrs. Greene, for her life only, and at her death, gave the same to her children, to be equally divided between them, share and share alike.*

The bill further charges, that Thomas B. Greene, when the deed was executed, and when he took the same, *had notice* that the deed of gift *was intended* by Batt Wyche to convey the negroes as before stated ; and that Batt Wyche, during his life time, understood and believed that the deed of gift was drawn in conformity with the purpose which he had in view in executing it; and that Greene *received the deed with notice of this fact,*

Wyche and Wife *vs.* Greene.

*and so held the same, with the negroes, for the benefit of his wife and children, as before charged.*

The bill further stated, that the increase of Sally and Sealy amounted to twenty-nine in number—giving their names and description, all of which, together with Ellick, were in the possession of Thomas B. Greene, in March, 1850; that he had given Moses to Eleazur Adams, one of the descendants of his wife; that the complainants instituted their action of trover, returnable to the April Term, 1850, of Upson Superior Court, for the recovery of the said thirty-one slaves, against the said Greene, upon which a trial was had in October thereafter, when the Circuit Judge refused to allow the complainants to show the alleged mistake, and decided that the deed of gift vested an absolute title to the property in Thomas B. Greene; and that in consequence of said decision, a verdict and judgment were rendered in favor of the defendant in the action.

The bill charges, that an appeal has been entered and that the same is now pending, and which will stand for trial at the ensuing term of the Superior Court, unless restrained; and that the complainants will be compelled again to submit to a defeat, unless they can have the deed of gift reformed, so as to represent and carry out the design of Batt Wyche in making the same, at the time it was executed and delivered.

And the complainants pray for an injunction, and that the mistake in the conveyance may be corrected and the writing reformed, &c.

On the 18th of September, 1851, the bill was presented by the complainants to Judge STARK, in vacation at Chambers, for his sanction, who upon examination, refused to grant the same, assigning as his reasons :

*First.* Because the complainants are plaintiffs in the action of trover, in the Superior Court of Upson County, in favor of said complainants, against said Thomas B. Greene, and this bill is filed to aid the recovery at Law. If the object of the bill should be attained, and the deed of gift reformed, still the plaintiffs having no legal interest in the property at the time the suit was instituted, cannot prevail at Law.

*Secondly.* Because there is no equity or justice in the bill. It does not appear that Greene knew what instructions Batt Wyche gave to the draftsman. Thirty-four years ago he seems to have received such a deed, as conveyed a fee in the property to himself, *jure uxoris ;* and for thirty-four years, he has maintained and supported the negroes, and enhanced their value. The reformation of the deed now, would operate as an iniquitous surprise upon him. He ought to occupy, and in my opinion does occupy, the same favored position as a *bona fide* purchaser without notice.

*Thirdly.* It does not appear from the bill, that the *feoffer,* Batt Wyche, though he seems to have lived many years after the execution of the deed, ever dissented from any of its provisions, or that his administrator or himself ever complained of any mistake.

*Fourthly.* Because several months after the execution of the deed now sought to be corrected, it seems that Batt Wyche had it before him and did an act, (see the indorsement on the deed) which if it is not strongly affirmatory of the deed as it stands, still it shows no dissatisfaction on account of mistake.

*Fifthly.* Because the great length of time which has intervened since the execution of this deed, would seem to be a very great objection now, to the interposition of a Court of Equity, in a case situated as this is, particularly as no fraud is imputed to Greene, the defendant. This is an executed gift, made and accepted and acted on by Greene, and acquiesced in, for thirty-four years by all parties. Any interference by a Court of Equity to disturb the estate created by the donor, as manifested by the written conveyance, could only be productive of mischief.

*Sixthly.* Because it does not appear how Greene is to be compensated for his trouble and expense in raising, clothing, feeding and nursing, thirty odd negroes, for thirty odd years. The mistake does not seem to have been insisted on or made known by Batt Wyche, or those claiming under him, until more than thirty years had elapsed ; and now to correct the mistake and wrest the property from Greene, without compensation, would be an egregious fraud upon him.

Wyche and Wife *vs.* Greene.

To this refusal to sanction the bill, the complainants, by their counsel, excepted, and now allege the same as error.

Admitting the facts stated in the complainants' bill to be true, is there no power in the whole administration of justice, competent to help them?

[1.] In the *Courts of Law*, it is admitted there is none. There the written will be held, as it properly was, upon the trial of the action of trover, to contain the true agreement of the parties; and that it furnishes better evidence of their meaning, than any that could be supplied by parol.

[2.] But Chancery has a broader jurisdiction, and will open the written contract, whether executed or executory, within or without the Statute of Frauds, a conveyance of realty or personalty, to let in an equity, arising from facts perfectly distinct from the construction of the instrument itself; and whatever doubts may have existed at one time to the contrary, it is now established, on the great and essential principles of justice, that relief may be had against a *mistake* in a written contract; that such a mistake may be shown by *parol proof,* and relief granted to the injured party, whether he sets up the mistake affirmatively by bill, or as a defence, or to rebut an equity. *Gillespie vs. Moon, 2 Johns. Ch. R.* 595. *Sugden on Vendors,* (7th edit.) p. 146 to 159. *Motteux vs. London Ap. Co.* 1 *Atkins R.* 545. *Simpson vs. Vaughn,* 2 *Atkins,* 33. *Langley vs. Brown,* 2 *Atk.* 203. *Rust vs. Barton,* 3 *Bro. Ch. R.* 454. 5 *Vesey,* 595. *Irnham vs. Child,* 1 *Bro. Ch. R.* 94. *Baker vs. Paine,* 1 *Ves.* 457. *Crosby vs. Middleton, Pr. ch.* 309. *Wiser vs. Blackley,* 1 *Johns. Ch. R.* 607. *South Sea Co. vs. D'Olippe,* cited 2 *Ves.* 317. 2 *Ves.* 377. 5 *Ves.* 601. *Pitcairne vs. Ozbourne,* 2 *Ves.* 375. *Fonbl. Eq. b.* 1 *ch.* 3, §11, note o. *Mitf. Pl.* 127. *Cloves vs. Higginison,* 1 *Ves. & Beames,* 524. *Ball vs. Slorie,* 1 *Sim. & Stu. R.* 210. *Marshall on Ins. b.* 1, *ch.* 8, §4. *Climon vs. Cook,* 1 *Sch. & Lefr.* 32. *Andrews vs. Essex, F. & M. Ins. Co.* 3 *Mason R.* 10. *Cook vs. Reston,* 2 *Root,* 78. *Elmore vs. Austin, Ib.* 415. *Parsons vs. Hosmer, Ib.* 1. *Sanford vs. Washam, Ib.* 499. *Chapman vs. Allen, Kirby,* 399. *Lemaster vs. Buckhart,* 2 *Bibb,* 29. *Coyers' Ex'rs. vs. McGee, Ib.* 321. *Mc-*

VOL XI 22

*Curdy vs. Breathitt*, 5 *Monroe*, 232. *Inshoe vs. Proctor*, 6 *Monroe*, 316. *Parcels vs. Cohesan*, 2 *J. J. Marshall*, 133. *Burdett vs. Sims*, 3 *J. J. Marsh*. 190. *Harrison vs. Jameson*, 3 *Ib*. 232. *Hunt vs. Freemons*, 1 *Hammond*, 501. *Mayfield vs. Seawell, Cook*, 437. *Phenix Ins. Co. vs. Gurnee*, 1 *Paige*, 278. *Rosewell vs. Fullen*, 2 *Cowen's R*. 129. *Chamberlain vs. Thompson*, 10 *Conn*. 243. *Wheaton vs. Wheaton*, 9 *Conn. Rep*. 96. *Young vs. Craig*, 2 *Bibb*, 270. *Smith vs. Smith*, 4 *Bibb*, 81. *McCrea vs. Hollis*, 4 *Dessaus*. 122. *Smith vs. Wallace*, 1 *Wash*. 254. *Gay vs. Adams*, 1 *Root*, 105. *Matron vs. Parkhurst, Root*, 414. *Wesley vs. Thomas*, 6 *Har. & Johns*. 24. *Samuat vs. Bowley*, *Ib*. 500. *Price vs. Fugerd*, 4 *Munf*. 68. *Newson vs. Bufferlow*, *Dev. Eq*. 379. *Wilkins vs. Woodfin*, 5 *Munf*. 183. *Lyle vs. Williamson*, 6 *Monroe*, 143. *Dunlap vs. Stetson*, 4 *Mason*, 349. *Stebbins vs. Eddey*, *Ib*. 414. *Fitzgerald vs. Peck*, 4 *Litt*. 127. *Flagg vs. Mann*, 2 *Sumner*, 487. *Wood vs. Woodrich*, 9 *Yerger*, 266. *Long vs. Israel*, 9 *Leigh*, 556. *Brown and Wife vs. Barnes et al*. 8 *Leigh*, 1. *White vs. Wilson*, 6 *Blackf*. 448. *Grate vs. Redd*, 4 *B. Monroe*, 178. 3 *B. Mon*. 573. 4 *Dana*, 309. *Lowndes vs. Chisolm*, 2 *McCord's Ch. Reps*. 455. *Champlin vs. Layton*, 1 *Edwards*, 467. *Hall vs. Reed*, 2 *Barb. Ch. Rep*. 560.

The practical application of this doctrine was not in general use in the Superior Courts of this State until a recent period; and cases have greatly multiplied under this head, since the decision by this Court, in *Rogers vs. Atkinson et al*. (1 *Kelly's Rep*. 12.) Indeed, for a long time it was strenuously resisted in England, upon the ground that it was irreconcilable with the rule of evidence at Common Law, which studiously excludes the admission of parol evidence to vary or control written contracts. But the doctrine was finally settled upon a firm foundation, for the reason, that it was indispensably necessary to suppress frauds and to promote general good faith and confidence in the formation of contracts; still, such cases are justly deemed exceptions to the rule which forbids the introduction of parol proof, to alter written contracts; and the present disposition of Courts of Equity, is to narrow, rather than to enlarge

the operation of the exception.   *Stewart vs.  Stewart*, 6  *Clark &*
*Fennell*, 964, 971.

[3.]  The proper inquiry in all applications like the present is,
does the instrument contain the true agreement between the parties?
Is it what they intended it should be ?  or has the   draftsman, by
mistake,  either as to fact or as to law,  drawn  a  different  con-
tract from the one contemplated?   'If so,  Equity will interpose,
and compel the parties to execute their true agreement, and  not
that which is reduced to writing.   For, while  Chancery.has no
power to make contracts for parties, or to substitute  one for an-
other, it can and will decree, that they shall reform those  which
they have *actually* made ; and if the  paper  does  not  fulfil  or
violates their understanding, it will  be rectified  and  made  to
conform to it.

[4.]  As to the degree or *quantum*  of proof  that  will  be re-
quired, before relief will be granted against written instruments,
the rule is  not  laid  down  with  inflexible  uniformity.   Lord
*Thurlow*, in *Shelbourne vs.  Inchiquin*, (1 *Bro.   Ch.*  349,) said,
" that the evidence must  be  strong and irrefragable."   But this
language has been considered too strong.   *Attorney  General vs.*
*Sitwell*, (1 *Yonge & Coll.* 583.)   And that all that was necessary,
was that the mistake should be made  out  by  evidence  clear of
all reasonable doubts.   Some  of  the  authorities  say,  that  the
*mistake* itself should be *plain ;*  and that it should be  *clearly* made
out by proofs which are  satisfactory.   *Hunkle vs.   Royal Assu-*
*rance Company*, 1 *Ves.* 317.   *Jeremy  on Eq. Jur.  pt.* 2, *ch.* 2, *p.*
368.   *Ib.  ch.  4. p.*  490, 491.   *Trummond vs.  Stangroom*, 6
*Ves.* 328, 339.   *Gillespie  vs.  Moon*, 2  *Johns.  Ch.  Rep.* 595,
597.   *Seymour vs.  United Insur. Co.* 2 *Johns.  Ch.  Rep.* 630.

And we apprehend that  this  rule  approximates  as  near to
accuracy, as any that could be prescribed.   For  while it would
be too stringent, perhaps,  in  the  language  of Lord *Thurlow*,
to hold that the proof should be beyond doubt and beyond con-
troversy, in nature and degree,  incapable of refutation ;  still it
would be dangerous in the extreme, to  allow  evidence  which
was loose, equivocal and  contradictory,  to add  to or  vary the
terms of  a written agreement.

[5.] I will only add, that a Court of Equity, it has been held, will grant relief in cases of mistake, in written agreements, not only where the fact of the mistake is expressly established, but where it is fairly implied from the nature of the transaction. 1 *Story's Eq. Jur.* (*4th edit.*) §162, *and authorities there cited.*

[6.] Of course, Courts of Equity will grant relief more readily where the mistake is made to appear by reference to another writing.

[7.] Having ascertained the general rule applicable to this class of cases, let us examine briefly, the reasons assigned by Judge STARK, for witholding his sanction to the complainants' bill :

1. The first is, that if the deed of gift is reformed, still, the plaintiffs, having no legal interest in the property at the time the action of trover was commenced, it cannot avail them any thing.

We apprehend that this is a mistake; and that the title will relate back, of course, to the date of the deed in 1817.

[8.] 2. The learned Judge says, there is no justice in the bill, and he gives as the reasons for this opinion : that it does not appear that Greene knew what instructions were given to the scrivener who drew the instrument; that thirty-four years ago, he received such a deed as conveyed a fee in the property to himself, in right of his wife ; and that ever since, he has maintained and supported the negroes, and greatly enhanced their value ; and that therefore, the reformation of the deed now, would operate as an iniquitous surprise upon him ; that he ought to occupy, and in the opinion of our brother, does occupy the same favored position with a *bona fide* purchaser, without notice.

So far as it respects the instructions given by Batt Wyche, to the draftsman of the deed, it is not indispensably necessary that Greene should have been cognizant of them. The bill charges, that the object of the donor in executing the conveyance, was to loan the property and its increase to Mrs. Greene, during her life, and to give the fee to the children at her death, to be equally divided among them, share and share alike ; and that Greene

Wyche and Wife *vs.* Greene.

accepted it with a full knowledge of this fact, and held it for this purpose.

And I would respectfully submit, that the other suggestions are directly at variance with the allegations in the bill, all of which are taken to be true, until controverted. How, for instance, could the reformation of the title operate as an "*iniquitous surprise*" upon one who is charged *to have had notice* of its true intent and meaning, at the time he received it, and fully acquiesced in its terms and provisions, as are now sought to be established?

[9.] And if Mr. Greene is entitled to occupy the same favored position of a *bona fide* purchaser, then Judge *Story* has totally misconceived the relative rights of these parties. He says that Equity will interfere to correct mistakes and reform written contracts between the original parties and those claiming under them in privity, such as personal representatives, heirs, devisees, legatees, assignees, *voluntary grantees*, (and such is Mr. Greene—the deed purporting to be founded alone upon the love and affection which the donor had for his daughter and her issues,) or judgment creditors, or purchasers from them, *with notice of the facts.* 1 *Story's Eq. Jur.* §165.

Would a Court of Equity refuse protection to a *purchaser* at a judicial sale, *with notice,* and extend it to a *voluntary grantee with* notice? And the bill, I repeat, distinctly and emphatically avers, that Mr. Greene *had notice of the facts.*

3. It does not appear from the bill, says the Chancellor, that the donor, Batt Wyche, though he seems to have lived many years after the execution of the deed, ever dissented from any of its provisions, or that his administrator or himself ever complained of any mistake.

This argument might, perhaps, be pressed with some plausibility upon the Jury on the final trial. Unfortunately, however, for the present issue, like almost every other objection which is set up, it is best answered by the bill itself. It asserts that Batt Wyche, while in life, understood and believed that the deed of gift did convey the property in the manner he intended.

But suppose he had discovered the mistake, and from an in-

disposition to intermeddle between his daughter and his grand children, or from any other cause, failed to take the necessary steps to have it corrected, and that his administrator was equally negligent while he managed the estate, would that bar the rights of these remainder-men?

4. Again: it is said that several months after the execution of the deed, Batt Wyche had it before him, and did an act—to wit, the substitution of five hundred dollars in lieu of a portion of the property thereby conveyed—which if it is not strongly affirmatory of the deed as it stands, still, evinces no dissatisfaction on account of any mistake which had inadvertently crept into it. Counsel for the plaintiffs in error deduce a very different conclusion from this indorsement. They ask, and with some significance, why make this substitution upon *the deed* at all? If Mr. Greene took an absolute, instead of a qualified estate in the negroes, why did not Mr. Wyche give him his note for the $500, which was to be paid in the fall thereafter, and take a relinquishment of the title to the negroes from Mr. Greene?

In truth, this transaction, in my judgment, proves but little either way. One thing is certain, it does not show, that at this time, contrary to the express averment in the bill, that a knowledge of the form of the paper, was brought home to Batt Wyche, or that his attention was called particularly to it.

[10.] 5. Another ground for not granting the injunction, is that the great length of time which has intervened since the execution of this deed, is a cogent reason now, against the interposition of a Court of Equity in a case situated as this is, particularly as no fraud is imputed to Greene, the defendant; and that to disturb the estate, as manifested by the paper title, could only be productive of mischief.

It is certainly true, that the title to relief against *a mistake*, or for any other cause, may be forfeited by acquiescence or unreasonable delay. *State of Rhode Island vs. The State of Massachusetts, 15 Peters,* 233. 4 *Howard,* 591. In this case however, the possession had continued undisturbed for *two hundred years,* under the assertion of right, with the claim in the

meantime admitted by the province alleging the mistake, and by other colonies, in the most solemn manner.

In *Westbrook vs. Harbeson,* (2 *McCord's Reps. in Ch.* 118) it was held, that the Court would not *readily* correct mistakes after a lap se of time.

It becomes important then to ascertain at what time the right accrued, to move in this matter.   Mrs. Greene, the mother of the complainants, and who had a life estate in the property, died in 1848 ; and in April, 1850, the action of trover was brought to recover the negroes, and the bill to reform the title was presented for sanction on the 19th day of September, 1851.   We should not be inclined to consider three years an unreasonable delay, under the circumstances; more especially, as the bill charges, that Greene retained the possession of the deed till 1824, when he gave it up to the administrator of Batt Wyche, to be used as a voucher, or for some other purpose, unknown to the complainants ; and that it was not found till 1850 or 1851, when it was discovered among the papers of George Wyche, who was then deceased, but who in his life time, was one of the administrators of Batt Wyche.

Thomas B. Greene took the deed, according to the charge in the bill, not as made, but as it was intended to be made. The children acquiesced in the deed, and in his possession under it, in like manner.   Mere lapse of time is nothing, unless there is an adverse possession, or claim set up to the property, adverse to the title of the other party.   Up to the death of Mrs. Greene, her husband was entitled to the possession of the property, even under the deed, as sought to be corrected.   The time that elapsed between the death of Mrs. Greene and the filing of the bill to reform the contract, would not even constitute a good statutable bar.

It is assumed, that no fraud is imputed to Greene.   The bill charges, that the true terms and stipulations of the gift, were mis-stated in the conveyance, contrary to the intention of the donor.   To allow Mr. Greene to avail himself of it, would it not be a gross injustice and equivalent to a positive fraud?

But the jurisdiction which is here invoked, does not depend upon fraud, but accident and surprise.

[11.]   6. The last reason assigned for refusing the application, is that it does not appear that Greene is to be compensated for his trouble and expense in raising, clothing, feeding and nursing thirty odd negroes for thirty odd years; that the mistake does not seem to have been insisted on or made known by Batt Wyche, or those claiming under him, until more than thirty years had elapsed ; and now, to correct the mistake and wrest the property from Greene, without compensation, would be an egregious fraud on him.

As to the non-intervention of Batt Wyche, in his life time, or of his minor grand-children, since his death, I have already endeavored to obviate that objection.   But if Mr. Greene chose to accept of a life estate in the negroes, as the bill repeatedly alleges that he did, what claim has he upon the remainder now, for compensation during the continuance of the life estate ?   He acted voluntarily and not by compulsion.

But allow that he is entitled to remuneration, all this will be a proper matter for the consideration of the special Jury—either upon the issue as made by the plaintiffs, or as it might perhaps be more properly presented, upon a cross-bill, filed by Greene.

The lapse of time seems to have been the stumbling block, to the mind of the Judge, in every aspect in which he viewed this case.   While it is manifestly no bar to the relief which is sought, it should undoubtedly impose upon the Court and Jury an additional obligation, to scrutinize closely the testimony upon which this claim is to be established.   The mistake should be made out by the clearest and most unequivocal evidence.   The averments in the bill are so perfectly explicit, as to preclude all doubt The proof should be equally satisfactory.   If the Courts are slow at all times in exerting their authority to reform written instruments, much more cautious should they be to exercise their jurisdiction, under the facts and circumstances of this case, when a portion of the original parties have gone hence, and material changes have taken place in the relations of those who survive.

Wyche and Wife *vs.* Greene.

There may be some reason, from the face of the paper itself, and from extrinsic proof, to presume a mistake ; that should not be sufficient. The evidence ought to be decisive—not that which hangs equal or nearly in *equilibrio.* Antecedent loose conversations, recollected at this distance of time, should be entitled to little or no weight. They should rather be deemed to have been merged in the more deliberate results of the written conveyance.

[12.] Regarding then, the grounds assigned for rejecting the application, as erroneous, is there any thing on the face of the bill which will justify *the decision ?* If so, the judgment should be affirmed. We would regard these grounds in the light of bad reasons, given to sustain a correct decision; and for the giving of which, a revisory Court should never reverse the judgment, unless the party has been prejudiced thereby.

[13.] It is contended in argument, that the representative of Batt Wyche should have been made a party to the bill ; and further, that the bill would have been demurrable on account of this omission. That is not a sufficient reason for refusing to sanction the bill. If found necessary, it could have been overruled in this particular.

[14.] Again : it is said, that the bill does not allege that the property was delivered under and by virtue of the deed of gift ; and the fact is supposed, by counsel, to have been otherwise. Admit this to be true. To transfer property by gift, there must be a deed or instrument of gift, *or,* there must be an actual delivery of the thing to the donee. Both are not requisite. 2 *Barn. & Ald.* 551. 2 *Black. Com.* 441, (*note* 5.)

And conceding that the conjecture is well founded, namely : that these slaves went into the possession of Greene, upon his intermarriage with Patience C. Wyche—the law thereby raising the presumption of a gift—was it not competent for him, three years thereafter, to agree with the father of his wife, that he took the property as a loan merely, to be used and enjoyed for and during the life of his wife, and to be equally divided between the children at her death ? And would not Greene be es-

topped, by this acknowledgment, from setting up a previous gift? But it is unnecessary, at present, to decide this point.

Without pursuing the discussion further, we are of the opinion that the decree of the Chancellor, refusing to sanction the bill, should be reversed; and that the same should be granted, according to the prayer of the bill.