1832.

CHAMPLIN
v.
LAYTIN.

October 23.

---

CHAMPLIN and others *vs.* LAYTIN and others.

LAYTIN and others *vs.* CHAMPLIN and others.

---

A contract entered into under a mutual misconception of legal rights, amounting to a mistake of law in the contracting parties, by which the object of it cannot be accomplished, is as liable to be set aside or rescinded as a contract founded in mistake of matters of fact.

---

THE bill in the first cause was brought for foreclosure and a sale; and for a decree over against Laytin, the mortgagor, for any deficiency.

The second suit was upon a cross bill, filed by the mortgagor, to have the mortgage delivered up and cancelled; as well as for a return of the money paid by him on account of the purchase of the mortgaged premises, at the time he gave the mortgage for the balance.

In the first instance, the defendants therein interposed a plea; but this had been overruled. They then answered; and both causes were heard together upon pleadings and proofs.

On the twenty-fourth day of January, one thousand eight hundred and twenty-eight, the complainants in the first suit, (defendants in the second) as executors and trustees of the estate of Elizabeth Depeyster, deceased, and under a power contained in- her will, offered for sale; by auction, six lots of ground in the city of New-York, belonging to her estate: three of the lots were represented on a map exhibited at the time of

Nov. 15, 16.
1832.

Vendor and
Purchaser.
Mistake.

sale as *fronting on Broadway between Fourth and Sixth Street,* and the remaining three as adjoining the rear and fronting on Mercer Street.

William Laytin became the purchaser of two of the lots, at the sums of three thousand dollars and one thousand three hundred dollars. One of the lots fronted on Broadway and the other was immediately in the rear. He paid one half of the purchase money; and gave his two bonds and the mortgages in question, upon the two lots, for securing the residue.

The conveyances executed by the executors to Laytin, the purchaser, stated, by way of recital, that Mrs. Depeyster, in her life time, and at the period of her decease, was seized in fee of the lots. The deeds purported to grant and convey the same in fee, with all the estate, right, title and interest which Mrs. Depeyster had at the time of her death, and which the executors, as grantors, then had by virtue of her will, as otherwise. Each conveyance contained a covenant, that the executors " had not done, committed or suffered any act, matter or thing " whatsoever whereby to charge or encumber the premises " thereby granted or any part thereof in title, estate or other-" wise howsoever."

The two lots thus sold and conveyed, were situated within the present bounds of Fifth Street, and extending from Broadway to Mercer Street. This street (Fifth Street) was not laid down on the general map of the city which had been made and published by the commissioners under the act of the Legislature in one thousand eight hundred and seven; nor was such street delineated on the map exhibited at the auction when these lots were sold. It appeared, however, that the corporation of the city of New York caused a map to be made, which was kept in the office of the Street Commissioner, whereon Fifth Street was laid down as a contemplated street; and, that in the year one thousand eight hundred and twenty-one, the executors and trustees of Mrs. Depeyster's estate, with a view to a sale of some portion of it, procured a map to be made of the same, laying out the property in lots and numbering them. On this plan, Fifth Street was also delineated as an intended street, in the same manner as on the map in the Street

Commissioner's office. By the one thus procured to be made
by the executors, and with express reference to it, they sold
some lots in the month of January one thousand eight hundred
and twenty. Among them were three, purchased by Mr.
Whittemore. One of them was described in the deed which
the executors executed to him as bounded North-easterly by
" Fifth Street."

In the summer of one thousand eight hundred and twenty-
nine, the corporation of the city of New York caused proceed-
ings to be instituted for the purpose of opening the part of
Fifth Street which comprised the lots in question. The exe-
cutors had remonstrated against it. Notwithstanding, com-
missioners of estimate and assessment were appointed. The
circumstance of making the map with the street laid down
upon it, the fact of the executors having sold by it, and the
mention of the street in the conveyance to Whittemore, were
urged before the commissioners, by persons interested in the
opening, as evidence of a perpetual right of way over the land
required for the street; and, although it was opposed by the
executors and by Laytin, yet the commissioners, considering
such a right of way to have been created and that Laytin's title
was subject to the easement of a way which rendered the lots
of nominal value only, awarded to him five dollars for the loss
or damage which he would sustain in consequence of relin-
quishing his title and interest in the two lots. Their report
was subsequently confirmed by the judges of the supreme
court, after a hearing before them upon objections duly taken.

Mr. *Henry W. Warner*, for the executors.

Mr. *F. B. Cutting*, for Laytin.

THE VICE-CHANCELLOR. The decision of the Supreme
Court, upon the report of the commissioners of estimate and
assessment in relation to the opening of Fifth Street, stands
unreversed; and the whole title and ownership of Laytin, as
grantee of the complainants in the first suit, and as their mort-
gagor for half of the purchase money, became extinguished. .

All this was known to the executors at the time they filed their bill; and, the propriety of resorting to this court for a decree of foreclosure and sale may well be questioned: since, nothing remains to be sold towards satisfying the mortgage, and an action at law upon the bonds would have been as beneficial as a decree over against the mortgagor. It is a matter, however, of equitable jurisdiction. The court is bound to take notice of the case; and can make a decree *in personam*, unless the defence which is set up or the equities presented by the cross bill require a different decision.

The grounds of defence to the original bill and of relief upon the cross bill are, virtually, the same and depend upon these considerations: whether there be any thing amounting to fraud in the conduct of the executors in selling or conveying the lots in question, or such a mistake or surprise as entitles the purchaser to have the contract rescinded, or such a breach of the covenant (contained in the deed itself,) against the grantor's own acts as this court can lay hold of by way of granting relief?

On a former occasion, when I considered the plea of no eviction, which was interposed to the cross bill, I was led to remark, that there appeared to be no sufficient reason for imputing actual or intentional fraud to the executors; and, after examining the case more at large, upon the testimony now before me, I am still of the same opinion. Representations were made and expectations held out, in order to induce the buyers to complete their purchases; and which have proved delusive. Still, I have no doubt they were made in good faith and upon grounds which Mr. Herring, the acting executor in making the sales, deemed, at the time, to be tenable. Nor does he appear to have wilfully suppressed any fact which was material to be known in relation to the condition or value of the property, as the law, from the decision of the *Merc r Street Case*, 4 *Cow.* 542, was then understood; and which, at that time, was the only decision that had a bearing upon the subject. The opinions, which varied, and, at length overruled it, are all subsequent to the month of January one thousand eight hundred and twenty-eight. Fraud is, therefore, in my opinion, entirely out of the question, as respects the manner of selling

the property, or, in relation to the consummation of the sales by the execution of conveyances and taking mortgages.

The question of mistake is one deserving of more consideration.

It is necessary to ascertain, how far a mistake has happened ? whether it is mutual or confined to one party ? then, its character—whether it be a mistake of fact or of law ? and, its effect upon the contract ?

When the executors proceeded to sell and convey the lots in question, there was no mistake on their part about the facts which were afterwards taken advantage of in order to diminish the value of the property : for, they had made a map with reference to Fifth Street, and sold lots by such map in the year one thousand eight hundred and twenty-two ; and, the conveyance to Whittemore, describing the land from Broadway to Mercer Street as bounded on one side by Fifth Street, was their own act. With a knowledge of what they had thus done, they sold to Laytin—not the naked fee of the land, subject to the use of others, but the whole beneficial ownership in as ample a manner as it was owned by Mrs. Depeyster at the time of her death ; and this too, for all the purposes of *occupancy* and *improvement* as *building lots,* and for prices corresponding with such objects.

In these views of the sale, however, they were mistaken. Still, it was a mistake of law (as it was afterwards expounded) ; and not a mistake of fact. They had fallen into an error with respect to the legal construction and effect of their previous acts, especially in the Whittemore deed, under which it was determined they had impliedly granted a right of way over the land sold to Laytin—and the consequence of which (though unforeseen) was to deprive him of the almost entire beneficial ownership in the land.

Such was the nature of the error or mistake on their part in selling the property lying within the bounds of the street.

Now, as to the purchaser. It appears from the testimony, that, although at the time of the sale he may have been ignorant of any map being made with Fifth Street delineated upon it, or of any street or contemplated way over the land he was

buying, yet, before the purchase was completed, he was fully apprised of these facts. His solicitor, while examining the title and ascertaining the true position of the lots, was shown the map on which Fifth Street was laid down; but, at the same time, he was verbally assured by Mr. Herring, that the street never would be opened, or, if opened, the owner would be paid the full value of the lots. Under these circumstances and with a knowledge of the lots being situated within the space desig- nated for a street, if ever the same should be required, he de- termined to complete the purchase. He also had notice of the Whittemore deed. In his searches, it was found on re- cord ; and a reference was made to it for the purpose, at least, of ascertaining it did not include the lots proposed to be con- veyed to Laytin. Whether the solicitor examined the record, so far as to be actually informed of the fact that Whittemore's lot (in its description) bounded on Fifth Street, does not dis- tinctly appear ; but I think enough is shown to warrant such a conclusion, as also, that he is fairly chargeable with notice of the whole contents of the deed.

He is, then, to be regarded as accepting a conveyance, paying a portion of the purchase money, and giving his bonds and mortgages for the balance, with as full a knowledge of the facts as the executors possessed. So, this mistake on his part is precisely of the same character as the error of the vendors.

The parties, then, may be placed upon the same footing with respect to the mistake into which they have both fallen ; a mistake as to the law resulting from the previous acts of the executors, which, at the time of effecting the sale, had a most important, though unforeseen bearing upon the property in question.

Does this afford any ground for equitable relief to the pur- chaser against his contract ?

As a general rule, this court does not relieve upon the ground of a mistake in matters of law : because, every man is presumed to have a knowledge of it; and the maxim "ignorantia juris non excusat" is observed in equity as well as in courts of law. Yet, there are cases in which this court will interfere upon the ground of such mistake in order to

relieve a party from the effect of his contract. As, for instance, if one is ignorant of a matter of law involved in the transaction, and another, knowing him to be so, takes advantage of such circumstance to make the contract; here the court will relieve, although, perhaps, more properly on account of fraud in the one party, than of ignorance of law in the other. So, if both parties should be ignorant of a matter of law and should enter into a contract for a particular object, the result whereof would, by law, be different from what they mutually intended: here, on account of the surprise or immediate result of the mistake of both, there can be no good reason why the court should not interfere in order to prevent the enforcement of the contract and relieve from the unexpected consequences of it. To refuse, would be to permit one party to take an unconscientious advantage of the other, and to derive a benefit from a contract which neither of them intended it should produce.

In *Hunt* v. *Rousmaniere*, 1. *Peters* 1., the Supreme Court of the United States, in refusing to reform an instrument on the ground of mistake from ignorance of law, were particular to say, they did not mean to lay it down as a rule that in no case will a court of equity relieve against a plain mistake arising from ignorance of law. On the first occasion when that case was before them (8. *Wheaton*, 174.) they emphatically expressed an unwillingness to go the length of saying, that where the effect of an instrument is acknowledged to have been entirely misunderstood by both parties, a court of equity was incapable of affording relief. If this case is not an authority establishing the doctrine, it is very far from being a decision against it; and I must examine other cases to see how far the court of chancery has gone in extending relief upon this ground.

Perhaps there may be some difficulty in reconciling all the cases to be found in the books which have a bearing upon this point. Three cases are noticed by Judge *Washington;* and there are several which he appears not to have observed.

The first I shall mention is *Bingham* v. *Bingham*, 1 *Ves. sen.* 127. There, a bill was filed to have purchase money

60

refunded, which the plaintiff had paid upon the sale and conveyance to him of an estate that afterwards appeared to have been the plaintiff's own property. From the report of the case and the statement in *Bett's supplement*, 79, the fact was, that the plaintiff had made the purchase through ignorance of the law as to his own title. The answer set up, that it was his own fault and he should have been better advised before he parted with his money, for all purchases are to be at the peril of the purchaser, unless he secures himself by covenants. It was, however, decreed for the plaintiff: because, although no fraud appeared and the defendant apprehended he had a right to sell, still, there was such a plain mistake as the court was warranted in relieving against. This case appears to me to have an important bearing upon the present one.

In *Stapylton* v. *Scott*, 13, *V. s.* 425, the Lord Chancellor, in adverting to the effect of a mistake of both parties upon the contract, observed, that it avoids the contract at law as well as here; and, in reference to the circumstances before him, remarked : " If the executors believed they had authority to sell " and intended to sell, and the plaintiff to buy the premises, he " should hold it no contract at law and much less in this court. " Where the purchaser's inducement to the contract depends " upon a mistake of his own, to which he is not led by the ven- " dor, whether that avoids the contract is a very different con- " sideration." The mistake which called forth these observations, was, probably, one of fact; and the remarks may, on that account, not be considered as strictly applicable.

But the next case appears to be a direct authority, that, where an agreement is entered into and consummated, the effect of which, as a matter of legal obligation, is not understood by the parties, there, upon the ground of mistake and surprise upon both, though there be no fraud, the contract will be rescinded. I refer to *Willan* v. *Willan*, 16, *Ves.* 72. An agreement had been made for a lease; and one was executed in pursuance of it, with covenants of renewal upon certain specified terms. The bill was filed to have it set aside or delivered up. Lord *Eldon*, upon the ground, that it was impossible the parties could have understood the effect of the covenants of re-

1832.

CHAMPLIN
v.
LAYTIN.

newal and because the circumstances themselves were proofs of their not understanding them and inasmuch as it was a matter of surprise upon both, therefore his lordship decreed, the agreement should be rescinded and the lease given up and cancelled.

I think these cases are sufficient to establish the correctness of the position, that a contract, entered into under a mutual misconception of legal rights, amounting to a mistake of law in both the contracting parties, by which the object and end of their contract, according to its intent and meaning, cannot be accomplished, is as liable to be set aside or rescinded as a contract founded in mistake of matters of fact. This court has the same power to grant relief in the one as in the other.

The case I am considering is clearly of this description. The facts were understood; but the law was not: both parties were alike mistaken. The vendors supposed they could give a title which would confer a beneficial ownership in the land. This was their object; and the purchaser calculated upon receiving a title which would vest him with an estate and interest for all useful purposes commensurate with the prices which he agreed to pay. In this they were both disappointed. The law did not admit of it. The vendors had previously deprived themselves of the power to confer such an ownership. The adjudication upon the point, pronounced in relation to these parties and upon the effect of the deed which they had given, is conclusive.

The contract, therefore, fails of its object; and it is but right and just it should be rescinded.

In *Hitchcock* v. *Giddings*, 4, *Price*, 135, the court of exchequer decided, that where a vendor, through ignorance and mistake, agreed to sell property in which he had no interest at the time of sale, the contract should be rescinded and a bond given for the purchase money cancelled and the interest which had been paid upon it refunded. I am at a loss to see how I can do less in the present case.

If this conclusion be a correct one and the parties are to be put in the same condition in which they would have been if the contract had never been made, it then becomes unneces-

sary to examine the effect of the covenant in the deed, or to say whether the purchaser can have any benefit from it in this court. These questions have given rise to much discussion: and to the examination of several cases in our own courts, in order to show there can be no relief in equity under the covenants, without an eviction by title paramount, which has not happened; and that, for the same reason, a failure of consideration for the want of title affords no ground for equitable relief.

Whether, in these respects, it can be distinguished from *Bumpus* v. *Platner*, 1 *J. C. R.* 213, *Abbot* v. *Allen*, 2. *Ib.* 519, *Chesterman* v. *Gardiner*, 5, *Ib.* 29, or *Gouverneur* v. *Elmendorf*, *Ib.* 79, I shall not now inquire. On the other ground, I think the purchaser abundantly entitled to the aid of this court. The case of *Lyon* v. *Richmond*, 1 *J. C. R.* 51, has been much relied upon to show he is not entitled to relief even upon this ground. Without impugning the general doctrine as there stated, which is undoubtedly correct, it is sufficient to observe that the peculiar circumstances, as already shown, distinguishes the present case and takes it out of the general rule.

Several other facts might be mentioned, to strengthen the equity of this case on the part of Laytin, the purchaser; and lessen the presumed rights of the executors: for instance, the inducements held out to him to complete his purchase by the verbal assurance of Mr. Herring, that Fifth Street would never be opened, and if opened, the lots would be paid for to their full value. He had a right to repose upon this assurance; and if, in other respects, the equities happen to be equal, this circumstance might help to turn the scale. In consequence of designating the street in the year one thousand eight hundred and twenty two, the executors sold the lots to Whittemore and others to better advantage than they otherwise would have done. This is proved. Having benefitted the estate by such operation, they have not now the same right to complain of the hardship which that measure alone has brought upon them.

Upon the whole, I am satisfied the loss must be borne by the estate. I shall dismiss the bill in the first suit; and with costs: considering it to have been unnecessarily filed. As to

the suit upon the cross bill, I shall decree the bonds and mort-gages to be given up and cancelled. The portion of the purchase money which was paid, is to be refunded, with interest; the purchaser is to allow for the small amount awarded to him by the commissioners; and neither party is to have costs against the other.