Green *v.* Morris and Essex Railroad Co.

THOMAS GREEN *vs.* THE MORRIS AND ESSEX RAILROAD
COMPANY.

The complainant was the owner of a farm through which the defendants, the
Morris and Essex Railroad Company, in the construction of their work,
made an excavation. Commissioners were called, under the company's
charter, to assess the damages, from whose award the complainant appealed.
Before the hearing of the appeal, H. and W., the lawyer and agent of the
defendants, proposed to submit the matter in difference to arbitration, which
was done. By the charter of the company, they were obliged to construct
and keep in repair suitable wagon ways over or under their road where the
railroad intersected any farm. During the deliberations of the arbitrators,
the complainant stated that he should require a suitable wagon way over the
railroad where it crossed his farm, but H. and W. replied that this was a
matter with which the arbitrators had nothing to do, and was no part of the
submission. This view was assented to by the arbitrators and both parties.
The arbitrators made their award, and H. and W. waited on complainant
with the money awarded and the draft of a deed. The complainant ob-
jected to signing this deed, on the ground that it did not in express terms
reserve all his rights to a crossing, but finally executed it, on being assured,
by the lawyer of the company, that such rights would not be affected by the
instrument. The company having failed to put up a crossing after being
legally notified, the complainant made it at his own expense, and, by virtue
of an authority contained in their charter, sued them at law for the money
expended. The company set up the deed as a bar to the recovery. This
bill was filed to reform the deed and enjoin the defendants from interposing
it as a defence at law. The company filed a demurrer to the bill.

*Held,* that though the general rule is—*ignorantia legis neminem excusat*—yet
it has its admitted exceptions.

That this case forms an exception to the general rule for several reasons, among
which are the following, *viz.*

*First.* Because the sole purpose of the deed was to effectuate the award
of the arbitrators—which purpose it did not accomplish; and because the
court can reform the deed by having the award before it, without resorting
to parol evidence.

*Second.* Because the mistake of the law was the *mutual* mistake of both parties
to the contract, and was to be attributed to the agent of the party now en-
deavoring to take advantage of it.

*Held further,* that although, in the view of this court, the right of the com-
plainant to require the company to make the crossing in question was not
released by giving of the deed, yet as the company had, by their plea at law,
set up a different construction, the complainant was entitled to be protected
in this court against the hazard of a decision at law sustaining such plea.

*E. W. Whelpley*, for demurrer.

*L. A. Chandler* and *F. T. Frelinghuysen*, contra.

THE CHANCELLOR. The following are the material facts stated in the bill. The complainant is the owner of a farm in the county of Morris. The defendants, in the construction of their railroad, made an excavation through the complainant's farm, of about five hundred feet in length, and varying from five to twelve feet deep. Commissioners were called under the charter of the company, who assessed the complainant's damages at six hundred and eighty dollars. From this award the complainant appealed to the Inferior Court of Common Pleas of the county of Morris, in which court he was entitled to review the award and to a trial by jury. Before the time for hearing arrived, Samuel B. Halsey and Freeman Wood represented to the complainant that they were acting for and on behalf of the railroad company, and proposed to submit the matters in difference to three arbitrators, to be selected by the parties, to which the complainant assented. The arbitrators were selected, and the submission was reduced to writing. The same matters were submitted to the arbitrators as were before, and acted upon by the commissioners appointed under and by virtue of the charter. By the ninth section of the charter of the company, they are obliged to construct and keep in repair good and sufficient bridges, or passages, over or under the said railroad or roads, where any public or other road shall cross the same; and also, where the railroad shall intersect any farm or lands of any individual, to provide and keep in repair suitable wagon ways over or under said road, so that he may pass the same; and if the company neglect to perform the said duty, after giving twenty days' notice to the company, the owner of the land may do it himself, and recover the valuation by common process of law.

The arbitrators, thus selected, proceeded to discharge the duties imposed upon them in the presence of the complainant, and of Halsey and Wood, who appeared and acted on behalf of the company. During their deliberations, the complainant stated that he should require a suitable wagon way over the railroad, where it crossed his farm. This was assented to, but Halsey and Wood stated that this was a matter with which the arbitrators had nothing to do, and was no part of the submission, but was an independent duty, imposed upon the company by their charter. This view was acquiesced in by the arbitrators and by all parties, and it is admitted to have been a correct view. The arbitrators awarded that the company should pay to the complainant eight hundred dollars for his damages. In awarding this amount, they did not take into consideration the matter of bridges or crossings. Soon after the award was completed, Halsey and Wood went to the complainant with eight hundred dollars and with a deed, prepared and ready for execution, from the complainant and his wife to the company. The complainant objected to signing the deed, on the ground, that it did not, in express words, reserve all his rights as to a crossing or bridges over the railroad. Halsey and Wood assured him that such rights were not at all affected by the deed. The deed was a special one in its character. Mr. Halsey was a lawyer by profession. The complainant knew this, and he relied upon his integrity as well as his professional learning. Upon Mr. Halsey's reassurances that the deed was a proper one, and did not compromise the complainant's rights to proper crossings over the road, he received the money, and executed and delivered the deed to Halsey and Wood. They delivered it to the company, giving the officers full knowledge of all that had occurred. The complainant gave notice to the company to construct a bridge over their railroad, where it crosses his land, and upon the company's neglecting to do so the complainant himself constructed the bridge, at

an expense exceeding seven hundred dollars. He then instituted a suit in the Supreme Court against the company, under the ninth section of their charter, to recover the value of the work done. The company set up, as a plea in bar to the recovery, the deed given by the complainant to the company. This bill is brought to relieve the complainant from legal effect of that deed. The bill prays that the deed may be reformed, and that the defendants may be enjoined from setting up the deed in bar to the complainant's action at law. To this bill the defendants have filed a general demurrer.

The principal ground urged in support of the demurrer is, that the object of the bill is to correct a mistake of law, and that the maxim is, that ignorance of law furnishes no excuse to a person either for a breach or for an omission of a duty—*ignorantia legis neminem excusat*—and that the same principle applies to agreements entered into in good faith, but under a mistake of the law.

Such undoubtedly is the general rule. It has been adhered to with great strictness by some authorities, while by others exceptions have been made to the rule altogether irreconcilable with the principles and reasons upon which it has been established. Some of these conflicting authorities are referred to and commented upon in 1 *Story's Eq. J.* 113, &c. But that the rule has its proper exceptions is beyond all dispute.

In 1 *Story's Eq. J.* § 113 and 116, the rule is laid down, that agreements made and acts done under a mistake of law are (if not otherwise objectionable) generally held valid and obligatory. The author says that he lays down the doctrine in this guarded and qualified manner because there are authorities which are supposed to contradict it, or at least to form exceptions to it. And in the case of *Hunt* v. *Rousmanerie's adm.*, 1 *Peter's Sup. C. R.* 17, a case much relied upon by the defendant's counsel, Mr. Justice Washington, in delivering the opinion of the court, says—"it is not the intention of the court, in the

case now under consideration, to lay it down, that there may not be cases in which a court of equity will relieve against a plain mistake arising from ignorance of law."

There are several considerations which induce me to consider this case as very properly embraced within the exceptions to the rule. The decision of the case does not rest exclusively upon the mere fact of a mistake in law upon the part of the complainant. This deed does not carry out the *intention* of the parties. And it is not necessary to resort to parol testimony to establish this fact. It was executed for the sole purpose of carrying into effect the award of the arbitrators. By that award, the complainant's rights and privileges under the ninth section of the defendant's charter were not impaired, nor were they in any manner whatever affected by it. The object of the deed was to give to the company the same rights and privileges in and upon the complainant's lands as the award gave them, and no more. All that is necessary to enable the court to reform this deed, and to make it comply with the intention of the parties, is to have before it the award which it was the design of all parties, by this deed, to carry into execution. The mistake is a mistake of the draftsman, and he acting as the agent of the party who now seeks to take advantage of the mistake. Mr. Halsey prepared the deed, and took it to the complainant to be executed. It was his misapprehension of the law that led to the mistake. It was not the carelessness or ignorance of the complainant, but of the defendants' agent. Mr. *Justice Story*, in commenting upon the case already referred to in 1 *Peters' Sup. C. R.* 1, 13, 14, *Story's Eq. J.* § 115, remarks—if there had been any mistake in the instrument itself, so that it did not contain what the parties had agreed on, that would have formed a very different case; for where an instrument is drawn and executed, which professes, or is intended to carry into execution an agreement previously entered into, but which, by mistake of the draftsman, either as to fact or to law,

does not fulfil that intention, or violates it, equity will correct the mistake, so as to produce a conformity to the instrument. Now we have before us an agreement in writing—the award of the arbitrators—to carry which into execution the deed was executed. By a misapprehension of the law on the part of all parties, and more particularly of the defendants' agent, who drew the deed, it releases valuable legal rights of the complainant which are not affected by that award. All the bill asks is that the deed may be made to conform to the award.

In the case of *Champlin* v. *Layton and others*, 1 *Edw. Ch. Rep.* 467, it was decided, that a contract entered into under a *mutual* misconception of legal rights, amounting to a mistake of law in the contracting parties, is as liable to be set aside or rescinded as a contract founded in mistake of matters of fact. In his opinion in that case, the Vice Chancellor says—so, if both parties should be ignorant of a matter of law, and should enter into a contract for a particular object, the result whereof would, by law, be different from what they mutually intended—here, on account of the surprise or immediate result of the mistake of both, there can be no good reason why the court should not interfere in order to prevent the enforcement of the contract, and relieve from the unexpected consequences of it. To refuse would be to permit one party to take an unconscientious advantage of the other, and to derive a benefit from a contract which neither of them intended it should produce. In *Stapylton* v. *Scott*, 13 *Ves.* 424, the *Lord Chancellor* says—I admit, where the contract has proceeded upon the mistake of *both parties*, that avoids the contract at law as well as here. In *Willan* v. *Willan*, 16 *Ves.* 72, an agreement was decreed to be given up upon the ground of surprise, neither party understanding the effect of it. This exception to the rule is recognised in the case of *Hunt* v. *Rousmanier's adm's*, in 8 *Wheat.* 174.

The case before the court is entitled to much more favorable consideration than these cases, from the fact,

before referred to, that the mutual mistake is to be attributed to the agent of the defendants. He prepared the deed, and he assured the complainant that it was correct. There was no want of ordinary prudence in the complainant's relying upon his judgment. He was a lawyer by profession, and it was natural and becoming that the complainant should have confided in him.

There is another consideration, which very properly enters into the case. It is a deed procured from the complainant, by the solicitation of the defendants, or their agent, which conveys to them valuable rights and privileges without any consideration. The award gives to the complainant eight hundred dollars, as a remuneration for his damages. But the legal effect of the deed is not only a release of the damages, for which the defendant was compensated, but a release of rights and privileges more valuable to the complainant than the pecuniary compensation awarded to him. The relative situation of the parties is a matter of some consideration in a court of equity: one was a plain man—the other a professional man, professing skill and experience as to the matter in which he volunteered to advise. I have no doubt, if this deed does not comport with the award, as to the propriety of the court's reforming it.

But I am embarrassed with another view of the case. In my judgment, the deed in question does not operate as a release of any rights the complainant may have under the ninth section of the defendants' charter—in other words, it is no legal bar to the complainant's recovery in his suit at law. The bill assumes that it is a bar. The counsel for the defendants raised an objection, that the fact of its being a bar to the complainant's recovery was not, with sufficient directness and distinctness, averred in the bill. But it is assumed throughout the bill to be, in connection with the use the defendant is making of the deed, the foundation for the complainant's suit. A distinct averment as to the legal effect of the deed is not

necessary. The construction of the deed by the court could not at all depend upon the complainant's opinion of it; nor would the complainant be bound here or elsewhere by such an averment.

The deed recites, that the company, by virtue of their act of incorporation, had surveyed their route from Morristown to Dover over and upon the lands of the complainant, giving a description of the land by metes and bounds, and then proceeds as follows : " Now be it known, that the said Thomas Green and his wife, in consideration of the sum of eight hundred dollars, to them in hand well and truly paid by the said the Morris and Essex Railroad Company, the receipt whereof is hereby acknowledged, have, and by these presents do grant, bargain, sell, convey, and confirm to the said the Morris and Essex Railroad Company, and to their successors and assigns for ever, the right, liberty, and privilege of erecting upon the tract of land above described, by its officers, agents, engineers, superintendents, contractors, workmen, and other persons in their employ, and to take possession of, hold, have, use, occupy, and excavate the same, and to erect embankments, bridges, and all other works necessary to lay rails, and do all other things which shall be suitable or necessary for the completion or repair of said road or roads. To have and to hold the said tract of land and premises unto the said the Morris and Essex Railroad Company, and to its successors and assigns for ever, for the purposes above mentioned and for all the other purposes mentioned in the said act of incorporation and the several supplements thereto. In witness whereof," &c.

The *seventh* section of the act provides the mode in which the company shall proceed, if they cannot agree with the owner of the land, to acquire the same by assessment. Three commissioners are to be appointed, who are to assess the value of the land and the damages, upon payment of which the company have the right to enter upon and occupy the land for the purposes of the railroad.

The provisions of the *ninth* section are wholly independ-ent of those of the *seventh* section, and make it obligatory upon the company to construct and keep in repair bridges or passages over or under the railroad, where it crosses public or private roads and where it intersects lands of individuals. It is very manifest that the assessment to be made by the commissioners does not include any compen-sation for such bridges or passages, and that, notwith-standing such assessment, the duty still remains upon the company to construct such bridges and passages over the road. If this is not so, then the *ninth* section is superflu-ous. The company cannot take possession of the land except under the provisions of the *seventh* section ; and if the assessment provided for in that section includes a re-muneration to the land owner for bridging, &c., there could be no propriety in imposing that duty by the *ninth* section. The deed in question conveys to the defendants nothing more than the liberty of erecting upon the land described the necessary superstructure for their railroad, and the necessary embankments, bridges, &c. This is the same right, and neither more or less than they would have ac-quired by an assessment under the seventh section of the act. I do not see how, with any propriety, a construction can be put upon this deed that will release the company from the duties imposed by the *ninth* section. An assess-ment by commissioners would not have released them; and, in my judgment, this deed confers upon them no additional rights, and releases them from no other duties or obligations. The language used in the deed is the same language used in the sixth section of the act, which defines what rights the company acquire by assessment. The deed confines the company to the same use of the land as the act confines them under the assessment. The language in the deed is an exact copy of the language of the act.

If, then, this construction of the deed is the correct one, there is no necessity of reforming it. But the defendants

p*

contend for a different construction, and upon their construction, insist that it is a bar to the complainant's recovery in his suit at law. If their construction is the correct one, then the complainant is entitled to the protection of the court. Under such circumstances, he had a right, when the defendants, by a formal plea at law, contended for such a construction of his deed, to claim the protection of this court. It was not safe for him to risk his case at law. If the court at law should be against him, it would then be too late for him to ask relief in this court. Would it be right, notwithstanding the construction this court has put upon the deed, to dismiss the complainant out of court? The court at law is not bound by the construction this court may put upon the deed. If the complainant's bill should be dismissed, and the court at law should differ from this court, the complainant will be without remedy. It may be asked—how can this court make a decree to reform the deed, when it is of opinion that it needs no reformation? But the court need not adopt any such inconsistency. It can afford to the complainant adequate relief without making a decree to reform the deed. A decree enjoining the defendants from setting up the deed as a bar to the complainant's recovery in the action at law will afford him all the protection that is necessary.

I have no doubt that, under the circumstances of this case as it is made by his bill, the complainant is entitled to relief.

The demurrer is overruled with costs.