ELIJAH SPARKS VS. W. D. PITTMAN et al.

1. CHANCERY JURISDICTION: *Mistake of law.  Power to reform.*
   The rule that equity will not relieve against mistakes of law is not abso-
   lute.  Relief from the consequences of an agreement formed upon a
   misapprehension of the law will not for that reason alone be granted.
   But if a deed, or instrument, is executed, and by reason of misappre-
   hension of its legal effect, fails to effectuate or conform to the agree-
   ment, a court of equity will relieve.

2. SAME: SAME: *Case in judgment.*
   On February 1, 1873, P. executed a deed of trust in favor of S. to secure
   payment of a debt due November, 1873.  Upon failure to pay, it was
   agreed between P. and S., in order to avoid a sale, that S. should take
   the property bound, upon an agreed valuation.  P. accordingly deliv-
   ered the personalty and executed a deed to the lands, which was his
   homestead.  Afterwards P. refused to surrender possession, claiming
   the last deed to be void, under act of April, 1873, for reason of the fail-
   ure of the wife to join in the conveyance.  *Held*, that S. was entitled to
   have the deed of trust restored, P. having failed to effectuate and per-
   form his agreement to satisfy the same, by making a good and valid
   title to the lands conveyed.

APPEAL from the Chancery Court of *Panola* County.

Hon. J. N. CAMPBELL. Chancellor.

The complainant was the holder and owner of a note executed
by defendant Pittman, secured by trust deed on Pittman's home-
stead, executed February 1, 1873.  It matured November 1,
1873.  The deed embraced horses and other personalty.  After
maturity, the trustee advertised the property for sale.  But in
order to avoid a public sale, it was agreed between the parties,
that the trustee should fix a valuation on the property, which was
done, and the aggregate valuation was about the amount of the
note and interest.  The personal property was delivered to Sparks
and a deed to the land was executed by Pittman to Sparks, and
Sparks surrendered the note.  But Pittman afterwards refused to
surrender possession of the land, alleging that the deed was void,
the land being his homestead, and his wife having failed to join
in the deed, as required by the act of April 18, 1873.

Sparks filed his bill in the chancery court of Panola county, alleging the above facts and praying that Mrs. Pittman be compelled to join in the deed, or that a commissioner be directed to divest title out of Pittman and wife, and invest it in Sparks, or, that the settlement relative to the land be set aside, and that the trust deed be restored, and the land sold to pay the debt, to the extent of its valuation by the trustee. Defendants demurred, on the grounds following:

1. Complainant's remedy, if any, is at law.

2. The bill seeks to set aside an executed contract, without alleging either mistake, accident or fraud.

3. That complainant having given up the trust deed, and accepted the deed, his remedy is on the breach of warranty.

4. That the bill seeks to divest the wife of her interest in the homestead, by virtue of a transaction, to which she was not a party and to which she gave no consent.

The court sustained the demurrer and dismissed the bill, and the case comes to this court on appeal from that decree.

*White & Chalmers*, for appellants:

The interest of the wife in the land was subordinate to the incumbrance, and if the incumbrance absorbed the land, the legislature could confer no interest upon her. When the trust deed was executed, the law did not require her to join in it. The cancellation of the trust deed alone gave the semblance of right. Her interest rests upon the assumption that the trust deed has been canceled. If it subsists, she has no interest in the land until the debt is paid which the instrument protects. Has the debt been settled? If not, she has no interest until it is settled. Sparks was to take the property at valuation. He got the personalty, but not the realty, because Pittman and wife will not allow him to have it. He got what purported to be a deed, but no land. That was not the agreement. It is said that the failure grew out of a mistake of law. The bill is filed to compel the execution of the contract, or to enforce an unsatisfied trust deed. This is one of the mistakes of law the court will correct. See

the prayer of the bill.    Rights undisputed before should not be
obstructed by a mistake of law.  Sparks surrendered a valid trust
deed, on condition that he should get the land; he failed to get
it, and prays to be restored to his original rights.    This is not
the correction of a mistake of law, but the ignoring of it.  Equity
will correct a mistake when it fails to accomplish the intention of
the parties.    A man promises to do a thing; it is no answer to
say, "I did what both parties thought was the thing, whether
they thought so through a mistake of law, or of fact."    We may
state two rules :   1. Equity will not compel a party to do some-
thing different from that which he agreed to do, because the thing
he agreed to do works a different legal effect from that antici-
pated.    2. Equity will compel a party to carry out that which
he has agreed to do, although something has been accepted by
the other side which it was mistakenly supposed accomplished
the desired end.    Pittman's contract was to pay the land on the
note.    He and Sparks both thought he had done it; but as he has
not done it, he will be compelled to execute the agreement.    The
case cited (7 Curtis, 419) illustrates the distinction we contend for,
and we accept it.    See 1 Peters, 13, (7 Curtis, 423–4).    We can
add nothing to the language there used by Justice WASHINGTON.
The presumption that every man knows the law may be rebutted
by proof, and a relief granted against a mistake of law.    Evants v.
Strode, 11 Ohio, 480 ; Trigg v. Read, 5 Humph., 529.    Whatever
may be the circumstances of the mistake, whether of law or fact,
a court of equity may grant relief where the transaction has prac-
tically worked a fraud on one of the parties.    (This is our case).
Skillman v. Teeple, Saxton (N. J.), 232 ;  Bigelow v. Barr, 4 Ohio,
358 ;  Williams v. Champion, 6 id., 169;  Lawrence v. Beaubien,
2 Bailey, 623;  Northrop v. Graves, 19 Conn., 548.    The follow-
ing cases are instances where relief was granted against mistakes
of law, upon the ground that the legal principle was doubtful,
and the parties could not reasonably be presumed to be acquaint-
ed with the law on the subject.    In some of them, the relief was
vested upon other grounds, but they are all cases where, upon

different theories, equitable relief was granted against mistakes of law.    Champlin *v.* Laytin, 1 Edw. Ch. 467; Lowndes *v.* Chisholm, 2 McCord, 455; Freeman *v.* Curtis, 51 Me., 140; Jordan *v.* Stevens, id., 78; Green *v.* Morris & E. R. R. Co., 1 Beasley, 165; Moreland *v.* Atchison, 19 Tex., 303; Cumberland Coal Co. *v.* Sherman, 20 Md., 117.    Our remedy is not in ejectment; the deed is invalid for any purpose.    See acts of 1873, p. 78.

*Miller & Miller*, for appellees :

Sparks does not allege that the deed is void, but only that Pittman "claims" that it is void, for reasons by him stated, and refuses to give up possession, notwithstanding the settlement and the execution of said deed.    The deed accepted by Sparks is not void except as to 80 acres of the land ; as to the other 80 acres it is valid, and if possession is refused, his remedy is ejectment.    The homestead act of April 18, 1873, vested in the wife a meritorious interest, and this interest should be protected as if she was a *bona fide* purchaser.    She took the interest subject to Sparks' prior lien, under the deed in trust, and if he had not chosen to make the settlement, the land might have been sold to pay the debt.    But, as soon as the settlement was made, the personalty delivered and the deed executed and delivered, and Pittman's note delivered up, all being done at the same time as an entire transaction, that moment Mrs. Pittman's interest became absolute, disincumbered, Sparks' lien being satisfied.    It does not appear whether he was to have a clear title to all the land, or whether he was to take Pittman's interest in it.    But suppose it was to be clear of incumbrance, and supposing Mrs. Pittman had been a party to the agreement, yet when Sparks accepted the deed without her being a party to it, there being no fraud or mistake, or a mistake of law only, the effect would be as if he had agreed to take Pittman's interest (80 acres).    The rule is, that an agreement in writing, or an instrument carrying an agreement into execution, shall not be varied by parol testimony stating conversations or circumstances anterior to the written agreement.    Hunt *v.* Rousmanier, 8 Wheat., 174.    A purchaser of realty subject to dower will be

left to his legal remedy. Greenleaf *v.* Queen, 1 Pet. (U. S.), 138. Sparks' remedy, if any, is against Pittman on breach of warranty. He gave up one security and took another, and now seeks the benefits of the former without showing fraud, accident or mistake. He must stand upon his new contract. "Where a party carries out his own security, the law will not create another in aid." Myers *v.* Estell, 48 Miss., 409, and cases there cited; Bond *v.* Kent, 2 Vern., 281 ; Clower *v.* Rawlings, 9 S. & M., 128.

TARBELL, J., delivered the opinion of the court.

On the first day of February, 1873, J. A. Pittman made and executed to J. D. Partee as trustee for Elijah Sparks, a deed of trust on certain lands and personal property described in the record. This deed of trust was made to secure the payment of a note due to Sparks for $1,000, and it was provided that if said note should not be paid by the first day of November, 1873, the trustee should proceed to sell the property named at public auction. Of the said note, $600 was for purchase money of the land contained in the deed of trust. All the property contained therein belonged to J. A. Pittman. The amount due and unpaid on the note November 1, 1873, was $1,095. The trustee was then about to sell the property according to the terms of the trust deed, when there was a conference between Sparks and Pittman, resulting in an agreement, by which the trustee, as the friend of both parties, should fix the value of all the property embraced in the trust deed, and that Sparks should take the same at such valuation, and give credit accordingly, thus avoiding a public sale. In accordance with this arrangement, the trustee fixed the price or value of the property as follows: 7 head of cattle, $70 ; 5 bales of cotton, $300; 1 mule, $125; land, $600; making a total of $1,095, the amount due Sparks. This valuation was accepted as satisfactory to both parties, and in pursuance thereof, the personal property was delivered to Sparks, and a deed of the land was executed by J. A. Pittman and delivered to Sparks, who, at the same time, and as a part of the arrangement, surrendered the note to Pitt-

man. Subsequently, Pittman declined to deliver the land to Sparks, claiming the deed to be void under the act entitled "an act in relation to the sale of homesteads," approved April 18, 1873, by the terms of which a deed made by a husband alone to land occupied as a homestead is made invalid. Acts of 1873, p. 78. Pittman was a married man, and occupied this land with his family. For reasons not stated, his wife did not join in the deed to Sparks. Upon these facts, Sparks filed his bill, praying that the wife be required to join in a deed to said land, or that in default thereof, a commissioner be appointed to make a deed divesting title out of Pittman and wife, and investing it in Sparks, or that so much of the settlement made between the parties as related to the land be vacated; that an account be taken, showing the amount due Sparks, exclusive of the personalty received by him; that the balance found due be declared a valid and subsisting debt, protected by the deed of trust; that the trustee named therein be directed to proceed to sell the land thereunder to pay the amount thus found due; and for such other relief, etc.

To the bill there was a demurrer on the following grounds :

1. The facts alleged do not make a case for equitable relief.

2. Complainant's remedy is at law.

3. The bill seeks to set aside or reconstruct a settlement agreed upon and executed by both parties, without alleging any cause therefor, accident, mistake or fraud.

4. If complainant held any security by virtue of the deed of trust on the homestead of respondents, that security was surrendered and satisfied, and another substituted therefor, and complainant's remedy, if he has any, is on the breach of warranty in Pittman's deed.

5. The bill admits that Mrs. Pittman had a homestead interest in the land involved, vested in her by the act of the legislature of April 18, 1873, and seeks to divest that interest by a decree by virtue of a transaction to which she was not a party, and without her consent.

This demurrer was sustained, and the bill dismissed. Hence,

an appeal.   The error relied on is the decree sustaining the de-murrer, and dismissing the bill.

The theory of the bill is not that which is assumed in the de-murrer.   The bill is not based exclusively on accident, mistake, or fraud, but on the ground that the contract of settlement has not been executed according to its terms, in this, that the deed from Pittman to Sparks does not give to the latter what was agreed to be given, to wit, the land of Pittman.

Nor is this a case of substitution of securities ; neither does the bill admit that Mrs. Pittman has a homestead interest in the land involved, in equity, as against Sparks, though in a court of law it might, in effect, be so held, in consequence of the apparent sat-isfaction of the deed of trust.   That deed was executed prior to the statute of April 18, 1873.   The note which it secured was surrendered subsequent to that date upon an agreement only par-tially executed by Pittman.   Sparks has not obtained what Pitt-man agreed to give him, viz, the land.   He has executed a void deed, but declines to deliver the land, without which the settle-ment is incomplete, and, substantially, a fraud on Sparks.   Can equity afford relief ?

A proposition heretofore stated may be repeated in slightly dif-ferent language, viz: The agreement in this case is, not to accept the deed of Pittman, and such interest as it might convey, in sat-isfaction of the $600 ; but it was, on the one hand, to give, and on the other, to accept the land.   The deed executed did not con-vey title, and was not a compliance with the agreement.

In Hunt v. Rousmanier's Adm'r, 7 Curtis' Decisions, 419, the papers were drawn precisely as agreed between the parties, though their effect was not such as was contemplated.   The court say : " There are certain principles of equity applicable to this question which, as general principles, we hold to be incontrovertible.   The first is, that where an instrument is drawn and executed, which professes, or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not ful-

fill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement. * * The execution of agreements fairly and legally entered into is one of the peculiar branches of equity jurisdiction; and if the instrument which is intended to execute the agreement be, for any cause, insufficient for that purpose, the agreement remains as much unexecuted as if one of the parties had refused altogether to comply with his engagement; and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party fully to perform his agreement according to the terms of it, and to the manifest intention of the parties." In that case it is stated, "that the general intention of the parties was to provide a security as effectual as a mortgage, * * and if such has been their agreement, the insufficiency of the instrument to effect that object, which was afterwards prepared, would have furnished a ground for the interposition of a court of equity;" but the plaintiff deliberately rejected a mortgage, or a bill of sale, and upon full consideration, dictated the instrument which was executed. It was " not pretended that the plaintiff was misled by ignorance of any fact connected with the agreement which he was about to conclude." If, then, say the court, "the agreement was not founded in a mistake of any material fact, and if it was executed in strict conformity with itself, we think it would be unprecedented for a court of equity to decree another security to be given, not only different from that which had been agreed upon, but one which had been deliberately considered and rejected by the party now asking relief, or to treat the case as if such other security had in fact been agreed upon, executed. * * Equity may compel parties to perform their agreements, when fairly entered into according to their terms; but it has no power to make agreements for parties, and then compel them to execute the same. The former is a legitimate branch of its jurisdiction, and, in its exercise, is highly beneficial to society." In that case it is further said: "The

agreement has been fully executed, and the only complaint is that the agreement itself was founded upon a misapprehension of the law, and the prayer is, to be relieved from the consequences of such mistake." In the case at bar, the complaint is not as to the original agreement, but as to its execution.

With reference to agreements based on mistakes of fact or of law, it is declared, in the case just quoted from, that, "if the mistake exists, not in the instrument which is intended to give effect to the agreement, but in the agreement itself, and is clearly proved to have been the result of ignorance of some material fact, a court of equity will, in general, grant relief, according to the nature of the particular case," and it is conceded that there may be cases in which "equity will relieve against a plain mistake arising from ignorance of law." It will be borne in mind that, in the case cited, the parties, upon deliberation and advice, rejected all other modes of security than the one selected, which proved ineffectual in consequence of the death of the party giving the security ; an event unforeseen, unprovided for, and not thought of; and that the court refused to "direct a new security of a different character to be given," especially as the rights of general creditors had intervened, whose equities were equal with the plaintiff.

In Evants v. Adm'r and Heirs of Strode, 11 Ohio, 480, the deed accepted by the party did not conform to the agreement in this, that only a quit claim was executed, whereas the agreement required terms of warranty. The court declared that when an instrument, by a mistake of the parties as to the legal effect of the terms used, fails to carry out their intention, relief may be afforded in equity, and that a mistake of law may be corrected in that forum. With reference to the acceptance of the deed, the court say: "that at law the deed being delivered, although not executed according to the agreement, the defendant would show its acceptance and bar a recovery, for, at law, the deed being accepted, the complainant could not avail himself of any correction of the mistake, and at law, the delivery and acceptance of the deed would, *ipso facto*, be a merger of the agreement."

A deed was executed and accepted in Green *v*. The M. & E. R. R. Co., 1 Beasley, 165, which did not carry out the intention of the parties. For this reason relief was granted. It was held that though the general rule is *ignorantia legis non excusat*, yet it has admitted exceptions.

In the case at bar, if Pittman knew the existence of the act of the legislature of April 18, 1873, and withheld this knowledge from Sparks who was ignorant of it, then a positive fraud was committed by the former upon the latter. Moreland *v*. Atchison, 19 Texas, 303. If both were ignorant of that act, there was a mutual mistake of law against which equity will relieve. Champlin *v*. Laytin, 1 Edw. Ch. 467; Green *v*. Morris and E. R. R. Co., 1 Beasley Ch. 165.

"Equity, in rescinding contracts, does not confine itself to cases of fraud. Cases likewise of plain mistake, or misapprehension, though not the effect of fraud or contrivance, are entitled to the interference of this court." Skillman *v*. Teeple, 1 Saxt. Ch., 232.

Discussing the question how far equity will relieve against mistakes of law and fact, the court, in Northrop *v*. Graves, 19 Conn., 548, say : "We shall have occasion to advert to some of the cases on this subject, and to some of the maxims which are supposed to apply to it, such as *volenti non fit injuria* (if a person consent to a wrong he cannot complain), *ignorantia legis non excusat*, and to the maxim often in requisition and generally false in reality, that every man is bound by, and therefore "presumed to know the law." These and all other general doctrines and aphorisms, when properly applied to facts and in furtherance of justice, should be carefully regarded ; but the danger is that they are often pressed into the service of injustice by a misapplication of their true meaning. It is better to yield to the force of truth and conscience than to a reverence for maxims. Referring to these maxims, in Cumberland Coal and Iron Co. *v*. Sherman, 20 Md., 117, and to the case of Lammot *v*. Bowly, 6 H. & J., 500, this very emphatic language is employed : "The result of the review of the authorities was that some of the most enlightened

and celebrated men whose characters are recorded in judicial history have given their sanction to the doctrine " that no man acting under a plain and acknowledged mistake of his legal rights shall forfeit those rights in consequence of such misapprehension."

That a party may not urge his ignorance of the law as an excuse or palliation of a crime, or even of a fault, we may admit; that he may not by reason of such ignorance or mistake, obtain any right or advantage over another, we may admit; but we do not admit that such other may obtain or secure an unjust advantage over him by reason of his ignorance or mistake even of the law." Northrop v. Graves, *supra*.

The subject of relief in equity against mistakes of law is very fully discussed in 1 Story's Eq. Jur., ch. 5, § 110, et seq., and see authorities cited in notes.    It is also quite elaborately considered in Trigg v. Read, 5 Humph., 529 ; Freeman v. Curtis, 51 Me., 140, etc.

" A mistake of law is not ordinarily a ground of relief in equity."    Mellish v. Robertson, 25 Vt., 603.    But it has never been decided " that a plain and acknowledged mistake in law is beyond the reach of equity."    Marshall, Ch. J., in Hunt v. Rousmanier, 8 Wheat., 174.    Each case, however, must depend upon its own particular circumstances.    Washington, J., in Hunt v. Rousmanier, *supra*.    Story's Eq. Jur. states the general rule to be that equity will not relieve against a pure and simple mistake of law stripped of all attending circumstances of equitable relief, yet that equity will interfere in such a case in its discretion.    § 138 e. In § 138 f, this author says: " We think it creditable to the courts and to the profession that, with all the zeal which has been sometimes manifested to make the rule excluding relief, in courts of equity, in every case of pure mistake of law absolute and inflexible, the sense of justice has steadily withstood the refinements of logic on the one hand, and the blind love of formal symmetry upon the other.    We trust the principle, that cases may and do occur, where courts of equity feel compelled to grant relief upon the mere ground of misapprehension of a clear rule of law, which

has so long maintained its standing among the fundamental rules of equity jurisprudence, is yet destined to afford the basis of many wise and just decrees, without infringing the general rule that mistake of law is presumptively no sufficient ground of equitable interference."

These observations with reference to relief in case of a mistake of law are supposed to have more or less application to the acceptance by Sparks of the deed of Pittman.

The decision of this case, however, is placed upon the ground that the deed did not conform to, or effectuate the agreement and intention of the parties, in pursuance of which it was executed. The settlement of the parties is not, therefore, complete. Sparks has fully performed on his part, but Pittman refuses to perform that which was most material and valuable to Sparks.

As this case is now presented, the trust deed should be restored to the extent required to secure the execution of the agreement between the parties.

The decree must, however, be reversed, and the cause remanded, with leave to respondents to answer in forty days from this date.

Ordered accordingly.